550 So.2d 876 (1989)
STATE of Louisiana, Appellee,
v.
Richard R. BYARS, Appellant.
No. 20849-KA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 1989.
Charles A. Smith, Indigent Defender Bd., Minden, for appellant.
William J. Guste, Jr., Atty. Gen., Henry N. Brown, Jr., Dist. Atty. and James Bullers, Asst. Dist. Atty., Minden, for appellee.
Before HALL, SEXTON and NORRIS, JJ.
*877 NORRIS, Judge.
The defendant, Richard R. Byars, age 20, was charged by bill of information with felony theft by misappropriating or taking long distance services worth $2,473.15 from the City of Minden and Long Distance Savers of Shreveport ("LDS") in violation of LSA-R.S. 14:67. Byars filed a motion to quash which the trial judge overruled at the beginning of trial. The six-member jury found him guilty as charged. The judge sentenced him to two years at hard labor but suspended the sentence, placed him on two years of active, supervised probation and imposed various conditions. Byars now appeals, advancing five assignments of error. For the reasons expressed, we affirm.

Facts
The City of Minden (in Webster Parish) uses LDS as its long-distance carrier. The mayor of Minden, Noel Byars, is the defendant's father; only he and the city clerk/treasurer, Mrs. Scallorn, have credit cards for LDS service. To gain access to the service a cardholder punches (or dials) a 1 + 800 number and then his credit card number. On June 5, 1987, Mayor Byars gave his LDS credit card number to the defendant, who was about to leave on a road tour with his Christian singing group, "Destiny." The mayor instructed him that the number was to be used for emergency purposes only. Byars did not use it on the road trip; however, after he returned to Minden, he called a friend in Birmingham, Alabama, just to talk. He made three short calls in June and one in July, none for emergencies. No one said anything to him about his use of the number. In August the credit card calls increased to 18, totalling $34.38; in September there were over 40, totalling $334.02. All these calls were attributed to "Mayor" on the LDS bills; Mrs. Scallorn paid the bills without question.
Things went on in this manner until June 28, 1988, when the mayor was out of town and Byars was at home wondering what to do about the broken air conditioner. Byars attempted to make a call but could not because the code number had been changed. He called Mrs. Scallorn at City Hall to get the new number. Mrs. Scallorn told him to come to the office to make the call; when he declined, she reluctantly gave him the number. Byars called his father and then resumed using the number for his personal calls. This continued until July 13, 1988, when a person to whom he was talking said someone had called her to inquire who had been calling her on an LDS credit card. When she named Byars, she was informed that his conduct was illegal. When she relayed this to Byars, he immediately quit using the number and consulted with his father. They requested and obtained from LDS copies of the city's bills and determined that Byars had made 411 calls, totalling $2,473.15. They reimbursed the city for all calls Byars had made, and paid his portion of the latest bills, which Mrs. Scallorn had not yet paid.
At trial Mrs. Scallorn testified that she had always paid the LDS bills without question and did not even know that Byars had the mayor's card number until late June 1988. After this, however, she began examining the bills and decided not to pay them. In August she notified Dep. Batton, who met with Byars and the mayor. After advising Byars of his rights, Dep. Batton took his taped statement, in which he admitted exceeding his authority to use the number. The statement was played both at the motion to quash and at trial.
Byars testified, admitting that he made 411 personal calls and exceeded his authority to use the number for emergencies only. He asserted, for the first time, that he always thought the city had a WATS line for which it paid a set monthly fee regardless of the amount of use. He therefore felt his calls were not costing the city anything. He admitted that his first use of the number in June and July 1987 was very sparing, and that when "nothing came of it" he started using it freely. He did not think his conduct was illegal, even though he told Dep. Batton in the taped statement that what he did was wrong. He also admitted that he continued to use the number until his activities were exposed and he was fearful of prosecution.
*878 The defense also offered the testimony of several witnesses who vouched for Byars's good reputation for honesty. The mayor did not testify.
As noted, the jury found Byars guilty as charged. The trial judge sentenced him to two years at hard labor but suspended the sentence and placed him on two years of active, supervised probation. Conditions of probation included making restitution; paying a fine of $750 plus all court costs; performing 100 hours of community service; maintaining full-time student or employment status; and paying a monthly probation fee of $20.

Discussion: Venue
By his first assignment Byars claims the trial court erred in finding the state had proved proper venue beyond a reasonable doubt. Improper venue was also the basis of the motion to quash that was overruled.
Proper venue is the parish in which the offense or an element of the offense occurred. LSA-Const. art. 1 § 16 (1974); LSA-C.Cr.P. art. 611. Prior to a recent amendment, LSA-C.Cr.P. art. 615 required the state to prove venue beyond a reasonable doubt both at a hearing on a motion to quash (if one was filed by the defendant) and at trial, beyond a reasonable doubt. At the instant trial, the state offered proof of venue at both the hearing on the motion to quash and at trial.
At the hearing on the motion, Dep. Batton testified that he met with Byars and the mayor on August 16. At this meeting Byars gave a taped statement which was played for the judge out of the jury's presence. In the statement Byars admitted he made most of the calls from his home at 515 Lanning St. Dep. Batton testified that this was in Webster Parish. This is sufficient to establish Webster Parish as the proper venue; the trial court did not err in overruling the motion to quash.
Article 615 was amended by LSA-Acts 1988, No. 554. It now provides as follows:
Art. 615. Improper venue; pleading
Improper venue shall be raised in advance of trial by motion to quash, and shall be tried by the judge alone. Venue shall not be considered an essential element to be proven by the state at trial, rather it shall be a jurisdictional matter to be proven by the state by a preponderance of the evidence and decided by the court in advance of trial.
The amendment was effective September 9, 1988, or more than a month before the instant trial. Strictly speaking, the state was not required to re-prove venue at trial. The proof on the motion to quash was sufficient. This assignment does not present reversible error.
Since, however, the parties were apparently unaware of the amendment and sought to comply with the old standard, we have considered whether the evidence at trial met the prior burden of proof. The state replayed the tape for the jury. Dep. Batton testified that Byars lived on Lanning St. in Minden, but did not state that Minden is in Webster Parish. Byars contends this deficiency undermines the jury's implicit finding of proper venue. We disagree. Venue can be shown by means other than direct testimony. State v. Hayes, 414 So.2d 717 (La.1982). Byars testified he was "most of the time" in Minden when he made the calls. R.p. 157. Jury members must be residents of the parish for at least one year; they can be presumed to be acquainted with major locations within the parish. State v. Hayes, supra; LSA-C.Cr.P. art. 401. With the evidence before them, the jurors could have reasonably (and correctly) concluded beyond a reasonable doubt that Minden, where the offense (or part of it) occurred, is in Webster Parish. Under art. 615 prior to amendment, the state adduced evidence sufficient to prove proper venue beyond a reasonable doubt.
Under art. 615 as amended, the state proved venue on the hearing of the motion to quash and no further proof was needed. This assignment does not present reversible error.

Sufficiency of evidence
By his next three assignments, Byars claims the state failed to prove every *879 element of the offense beyond a reasonable doubt. In a sufficiency claim, the appropriate standard of review is whether, after viewing the evidence in light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); LSA-C.Cr.P. art. 821. Theft is defined as follows:
§ 14:67. Theft.
Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential. * * *
The elements of theft have therefore been enumerated as follows: (1) there must be a misappropriation or taking; (2) the object of the misappropriation or taking must be a thing of value; (3) the thing must belong to another; and (4) the misappropriation or taking must be with the intent to deprive the owner permanently of the thing taken. See State v. Pittman, 368 So.2d 708 (La.1979). We would add, in a case of this sort, (5) the misappropriation or taking must be without the owner's consent, or by fraudulent conduct. Long distance telephone services are a "thing of value," belong to another and may be subject to a taking or misappropriation under the theft statute. See State v. Gates, 478 So.2d 241 (La.App. 3d Cir.1985). Byars specifically contests the state's proof as to element (5), lack of consent, and (4), intent to deprive permanently.
As for lack of consent, Mrs. Scallorn testified that the city had no formal, written policy as to long distance phone use. She and other city employees have made personal calls on LDS in the past, but the practice was "not encouraged." Other employees repaid the city for their calls. R.p.p. 103-104. There is no evidence that they were prosecuted. Mrs. Scallorn gave Byars the new code number, but she did so reluctantly and only after Byars represented to her that the mayor had given him authority to use it when the mayor was out of town. While Mrs. Scallorn's testimony may, arguably, not establish an official lack of consent, Byars's own testimony includes a frank admission that he exceeded the authority, granted by his father, to use the number in case of an emergency. R.p. 154. Exceeding one's authority to use phone services is tantamount to using them without authority. State v. Gates, supra. Further, Byars knew he was not a city employee and the card was not his. Given these admissions, together with Mrs. Scallorn's testimony, a rational trier of fact could have concluded beyond a reasonable doubt that Byars was charging calls to the city's account without the city's consent.
As for intent to permanently deprive, the state urges that the circumstances of the offense give adequate proof. Specific criminal intent is a state of mind. LSA-R.S. 14:10. Though it is a question of fact, it need not be proven as a fact; it may be inferred from the circumstances. LSA-R.S. 15:445 (repealed); cf. LSA-C.Ev. art. 404 B; State v. Graham, 420 So.2d 1126 (La.1982); State v. Kahey, 436 So.2d 475 (La.1983). The finding of requisite intent is a matter for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982); State v. Butler, 322 So.2d 189 (La.1975). The reviewing court assesses the implicit finding of specific intent under the Jackson v. Virginia standard. State v. Huizar, supra.
The state proved that Byars's initial wrongful use of the number was tentative and sparing, but when he decided that "nothing would come of it" he began to use it extensively. During the period of heavy use, the city seemed unaware. Byars stopped using it only when his conduct was detected; he reimbursed the city only when he faced prosecution. According to the state, Byars first tested the waters, then made a lot of "free" calls, and finally tried to depict his position in the most favorable light. In short, the state claims, the evidence proves beyond a reasonable doubt that Byars intended permanently to deprive the city of a thing of value by charging *880 hundreds of unauthorized long distance cards to its LDS account.
Admittedly, there are circumstances wherein a defendant who restores the property to the owner, or compensates him for it, may negate felonious intent. State v. Andrus, 250 La. 765, 199 So.2d 867 (1967), overruled on other grounds in State v. Blackwell, 298 So.2d 798 (La. 1973), cert. denied 420 U.S. 976, 95 S.Ct. 1401, 43 L.Ed.2d 656 (1975). We feel, however, that return of the property or reimbursement only after detection and threat of prosecution does not by itself negate the intent. See 52A C.J.S. "Larceny" § 136(2)(d). There are also circumstances in which a failure to conceal one's actions may tend to negate specific intent. State v. McBride, 504 So.2d 840 (La.1987). When Byars called Mrs. Scallorn on June 28 to get the new code number, he made no effort to conceal his objective of placing a call on the card. However, he told her the purpose of his call and convinced her it was an "emergency." In effect, Byars never revealed that he was using the city's card for personal, non-emergency calls. Viewed in light most favorable to the prosecution, Byars's reimbursement and his alleged lack of concealment from Mrs. Scallorn do not negate the otherwise strong inference of intent.
Byars's main argument is based on his testimony that he always thought the city had a WATS line for which it paid a set monthly fee regardless of the amount of use. Assuming (he claims) his calls did cost the city extra, he had no intent of permanently depriving the city of anything. The defense asserts that Byars's testimony on this score is uncontradicted.
The argument is akin to a defense of mistake of fact. Reasonable ignorance of fact or mistake of fact which precludes the presence of any mental element required in the crime is a defense, unless there is a statutory provision to the contrary. LSA-R.S. 14:16. For the defense to apply, the evidence must show, when viewed in light most favorable to the prosecution, that Byars mistakenly but reasonably thought his credit card calls did not cost the city.
An unreasonable belief is not a defense. State v. Henderson, 296 So.2d 805 (La. 1974). Byars admitted he did not ask his father whether the calls were free. R.p. 158. This would have been a reasonable precaution after his father attempted to restrict his use of the number to emergencies only. If Byars implicitly relied on mistake of fact, the jury was entitled to find that his assumption during 13 months of heavy telephoning was unreasonable.
More importantly, however, the jury is the arbiter of witnesses' credibility. The trier of fact can accept or reject, in whole or part, the testimony of any witness. State v. Roy, 496 So.2d 583 (La.App. 1st Cir.1986), writ denied 501 So.2d 228 (La. 1987). The jury saw and heard that Byars's openness about the offense and his willingness to repay arose only after he was caught. It also heard the evolution of Byars's statements. When questioned by Dep. Batton on August 16, Byars did not assert that he thought he was using a WATS line; he did not claim to believe his calls did not cost the city anything; even in response to a specific question by Dep. Batton, he did not offer any kind of defense. However, at trial two months later he immediately and repeatedly asserted his belief that it was a WATS line and the calls were free. The jury could have concluded that the WATS line defense was of recent origin and did not express his true intent as he placed over 400 long distance calls. Also, Byars's trial testimony, though steeped in the WATS line defense, was still interspersed with references to the "LDS code" or "access code," the same terms he used with Dep. Batton in admitting his wrongful use. The jury could choose to accept the state's evidence, which proves intent, and to disregard the self-serving, exculpatory portions of Byars's trial testimony. State v. Roy, supra. Under the circumstances, the evidence is sufficient to persuade a rational trier of fact beyond a reasonable doubt that Byars had the specific intent required by the statute.
These assignments do not present reversible error.

*881 Excessive sentence

By his final assignment, Byars claims his sentence is excessive. He particularly cites the trial judge's failure to note many mitigating factors which, according to Byars, would have counseled in favor of a lighter sentence.
The test of excessiveness is two-tiered. First the record must show that the sentencing judge took cognizance of the criteria set forth in LSA-C.Cr.P. art. 894.1. The judge is not required to list every aggravating or mitigating factor as long as the record shows that he adequately considered the guidelines. State v. Smith, 433 So.2d 688 (La.1983). The goal of art. 894.1 is not rote compliance but the articulation of a factual basis for the sentence. When the record shows an adequate factual basis, remand is unnecessary even in the absence of full compliance with the article. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements to consider are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988), writ denied 521 So.2d 1143 (La.1988).
The second tier is constitutional excessiveness. A sentence violates LSA-Const. art. 1 § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or is nothing more than needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if it shocks the sense of justice, when the crime and punishment are considered in light of the harm done to society. State v. Hogan, 480 So.2d 288 (La. 1985).
The trial judge stated for the record that Byars was 20 years old, the youngest of four children and lived at home with his parents. He was a below average student, in good health and a regular attendee of Calvary Baptist Church. He had only two prior misdemeanors, but one of these was for using emergency lights in a private vehicle. This last point led the trial judge to what it considered the heart of the matter, that Byars was immature and tended to abuse the privileges associated with being the mayor's son. This was unfortunate, the judge felt, because someone else without political connections might not have been scrutinized so closely and would probably not have been "put through all this." The judge proceeded to impose a sentence of two years at hard labor, suspend it, and place Byars on two years of active, supervised probation, subject to the five conditions noted above.
The trial judge did not mention several mitigating factors. For instance, Byars made full restitution; the victim, through the mayor, facilitated the offense by providing him with the credit card number, if only for a limited purpose; and he has led a relatively law-abiding life prior to this incident. Byars also urges that he never intended to cause or threaten serious harm. Although the jury rejected Byars's defense of the intent element, we could view his claimed misunderstanding as remorseful and mitigating. By contrast, the aggravating factors include the magnitude and persistency of the offense, averaging over $200 of long distance calls a month for 14 months. There was, as the trial judge noted, an abuse of authority. These factors undoubtedly led the trial judge to reprimand Byars strongly in the sentencing colloquy and admonish him to be more responsible.
Though the trial judge did not mention the factors, and his compliance was minimal, the sentence imposed belies Byars's claim that the judge did not consider them. In the first place, he suspended all prison time; then he imposed no jail time as a condition of probation. If he adheres to the terms of probation, Byars will serve no time even though he faced a maximum of ten years at hard labor. The first condition of probation was restitution, but according to the PSI restitution was made before sentencing. In imposing this condition, which had already been satisfied, the trial judge was not unaware of the facts. Rather, he wanted to make restitution a formal condition of record; he perhaps also wanted *882 to "talk tough" but impose a nonexcessive sentence. We suspect this was his motive since he stated the mayor was not giving the defendant adequate paternal support. He also stated that a less distinguished young man would not have been "put through all this," and we are inclined to agree.
The remaining conditions of probation, community service and full-time student or employment status, strike us as reasonably related to rehabilitation. The fine of $750 is statutorily authorized. LSA-C.Cr.P. art. 895.1; State v. Alleman, 439 So.2d 418 (La.1983); State v. Rugon, 355 So.2d 876 (La.1977). Though it will be somewhat burdensome it is not abusive, especially in light of the $3,000 maximum the court could have imposed as part of the sentence itself. LSA-R.S. 14:67.
In sum, we find an adequate factual basis for the sentence and sufficient compliance with the article. We have also considered the excessiveness claim. Byars's conduct was not a violent offense; there is no claim that he seriously endangered the city's finances. He was exposed to a maximum of ten years at hard labor and a fine of $3,000. Provided he adheres to the conditions of probation, he will serve no jail time and will pay a fine of $750 plus court costs. In the balance this does not shock our sense of justice. This assignment does not present reversible error.

Decree
We have finally reviewed the record for errors patent and find none. LSA-C.Cr.P. art. 920(2). Richard Byars's conviction and sentence are therefore affirmed.
CONVICTION AND SENTENCE AFFIRMED.