694 So.2d 401 (1997)
STATE of Louisiana
v.
Bryant BANKS.
Nos. 96-KA-652, 96-KA-653.
Court of Appeal of Louisiana, Fifth Circuit.
January 15, 1997.
*402 Linda Davis-Short, Staff Appellate Counsel, 24th Judicial District, Indigent Defender Board, Gretna, for Appellant.
Jack M. Capella, District Attorney, Lee Anne Wall, Assistant District Attorney, Gretna, for Appellee.
Before GAUDIN, WICKER and CANNELLA, JJ.
WICKER, Judge.
Bryant Banks appeals his convictions of one count of second degree murder and two counts of armed robbery. We affirm.
*403 On March 11, 1994 Bryant Banks was charged by bill of information with two counts of violation of La.R.S. 14:64, for armed robbery of Toric Jackson and Dwight Dedeaux. (District court No. 94-1443; No. 96-KA-653 in this court.) On March 24, 1994, Bryant Banks was charged by indictment with one count of violation of La.R.S. 14:64, armed robbery of Glenn Jones, and one count of violation of La.R.S. 14:30, the first degree murder of Margaret Kramer. (District court No. 94-1667; No. 96-KA-652 in this court.) Included as codefendants in both the bill of information and the indictment were Demond Banks, Julius Banks and Ted Alexis. Bryant Banks entered pleas of not guilty as to all charges.
The charge of armed robbery of Glenn Jones was later dismissed as to all defendants and the first-degree murder charge was reduced to a charge of second degree murder as to Bryant Banks only. Defendant was tried individually in both cases on May 6, 7, 8, and 9, 1996. The twelve-member jury found defendant guilty as to the charge of second degree murder, and as to both counts of armed robbery.[1]
On May 15, 1996, defendant filed a motion for judgment of acquittal as to the charge of armed robbery of Dwight Dedeaux in case number 94-1443. The trial court heard and denied the motion on June 3, 1996. Defendant waived sentencing delays. The court immediately sentenced him to life imprisonment at hard labor on the second degree murder conviction and to fifty years at hard labor on each count of armed robbery. The two armed robbery sentences were to run concurrent to each other and consecutive to the murder sentence. The court specified that all sentences would be served without parole, probation, or suspension of sentence.
Defendant has appealed in both cases, which have been consolidated in this court as Nos. 96-KA-652 and 96-KA-653.

FACTS
On October 24, 1993, at about 1:30 a.m., Glenn Jones and his companion, Margaret Kramer, drove to a Time Saver convenience store on Jefferson Highway to purchase cigarettes. Jones parked the Chevrolet belonging to his mother in the parking lot and Kramer went inside the store. Discovering she did not have enough money to buy the cigarettes, Kramer returned to the car. She sat in the front passenger seat and searched through her purse for the additional money she needed.
Four young black men in a Jeep Cherokee entered the lot and parked five to eight feet from the driver's side of the Chevrolet. These men were later identified as Julius Banks, Demond Banks, Ted Alexis and defendant, Bryant Banks. Two of the men Julius Banks and Ted Alexisjumped out of the Jeep and approached the car. Demond Banks and Bryant Banks, who was the driver, remained in the Jeep.
Jones testified that Julius Banks went to the driver's side window of the Chevrolet and demanded Jones' wallet. Julius hit him in the head with the butt of a gun that Jones described as a chrome automatic. Kramer screamed. Julius said, "Shut the bitch up," and fired his gun into the driver's side window, fatally wounding Kramer. Julius took Jones' wallet, keys, and a gold chain and crucifix. Ted Alexis and Julius got back into the Jeep and the four perpetrators fled the scene. Jones went into the Time Saver Store to ask for help and a store employee called police.
Demond Banks testified at trial as part of a plea agreement with the state. According to Demond, it was Ted Alexis who fired the shot that killed Kramer. Demond testified that after leaving Time Saver, he and his companions went to a pool hall with the intention of shooting pool. They stayed there only briefly, however, because the place was too crowded.
*404 Toric Jackson testified that at about 2:00 a.m. on the morning of October 24, he was driving his Oldsmobile Cutlass on Monticello Street near the Orleans Parish line. The Jeep Cherokee driven by defendant went through a red traffic light and nearly hit Jackson's car. Defendant drove behind Jackson's car, causing the Jeep to bump it repeatedly. Jackson's car eventually stalled. All four men exited the Jeep. They ordered Jackson and his passenger, Dwight Dedeaux, to get out of the Oldsmobile and empty their pockets.
Two of the men attacked Jackson, while the other two accosted Dedeaux. Ted Alexis held a gun to Jackson's head and ordered him to empty his pockets. Alexis took Jackson's watch, various jewelry, and one hundred fifty dollars in currency. The perpetrators took a jacket from Dedeaux. Alexis hit Jackson and threatened to kill him and put his body in the trunk of the car. Defendant urged Alexis not to do so, arguing that they should make their getaway before police arrived. The four men then left the scene in the Jeep. Jackson and Dedeaux called police.
At about 2:00 a.m. on October 24, Wendell Barley completed a call from a pay telephone at a Winn-Dixie store on Morrison Road in New Orleans East. He was making his way home on Bundy Road when the four men in the Jeep stopped him. Alexis, who had a gun, pushed Barley to the ground and took his Sony Walkman, an audio cassette, a pouch that held his pocket Bible, and his wallet. Alexis hit Barley with the butt of the gun. Barley testified that two more men got out of the back seat of the Jeep and beat him. Defendant, who remained in the driver's seat of the Jeep, urged the others to hurry. The four perpetrators left the scene in the Jeep. Barley walked to his house and called police.
Jefferson Parish sheriff's deputies broadcast the victims' descriptions of the perpetrators and their vehicle over police radio. The description given was of four young black males in a dark colored Jeep Cherokee. One of the men was described as wearing a red bandana around his neck. Sergeant Michael Cimino of the New Orleans Police Department (N.O.P.D.) was the night watch supervisor in the third police district in the early morning hours of October 24, 1993. Cimino heard the broadcast description, and instructed his officers to be on the alert for the suspects.
N.O.P.D. Officer Raymond Radosti and his partner were on patrol when they spotted the perpetrators standing next to the Jeep in the parking lot of a K & B Drugstore at the corner of Gentilly Boulevard and Elysian Fields Avenue in New Orleans. Ted Alexis wore a red bandana. Radosti notified Cimino, who dispatched backup units to the area. When the perpetrators saw police, they fled on foot. Several officers gave chase and apprehended the men. The perpetrators were all returned to the K & B parking lot and placed under arrest.
Upon searching defendant, N.O.P.D. Officer Robert Hoobler found a gold chain, which Glenn Jones identified as the one taken from him in the Time Saver robbery. N.O.P.D. Officer Kevin Balancier testified that at the time of his arrest, defendant told officers his name was Richard Phillips. Balancier later learned defendant's real name from other officers.
Jefferson Parish sheriff's deputies transported victims Glenn Jones, Toric Jackson and Wendell Barley to the scene of the arrests. Deputy Dennis Thornton testified that the suspects were shown individually to the victims, who positively identified each man. Jackson testified that he made the identifications an hour to an hour-and-a-half after he was robbed.
Items recovered from inside the Jeep included Barley's Walkman, the grey jacket taken from Dedeaux, and a .45 caliber semi-automatic handgun. Glenn Jones and Wendell Barley testified that this gun was the one used by the perpetrators. Toric Jackson testified that the gun looked similar to the one used by the perpetrators, but that he was not certain. A .45 caliber bullet casing was retrieved from the driver's seat of the Chevrolet in which Margaret Kramer was killed. A .45 caliber projectile was found near Kramer's body and was determined to be the bullet that killed Kramer. At the *405 time the gun was seized, it contained three.45 caliber cartridges.
Louise Walzer, a firearms examiner with the Jefferson Parish Sheriff's Office, testified that the tests she performed showed the projectile and casing were fired from the gun in evidence. Dr. Fraser MacKenzie, the pathologist who performed the autopsy on Margaret Kramer's body, testified that the cause of death was a gunshot wound to the body, with perforating wounds to the heart, liver, intestinal tract, and left kidney.
Detective Maggie Snow testified that the Jeep Cherokee was processed by a technician at the detective bureau of the Jefferson Parish Sheriff's Office. Blood samples removed from a front headrest of the Jeep were human, Type A. Kramer's blood, tested during the autopsy, was Type A.
At 6:49 a.m. on October 24, Demond Banks gave a voluntary tape-recorded statement to police in the presence of Detectives Sacks and Snow. In the statement, Demond implicated his three companions in that morning's crimes. On January 25, 1994, Toric Jackson viewed four separate photographic lineups at the detective bureau. Jackson made positive identifications of defendant as well as of Demond Banks, Julius Banks, and Ted Alexis. Glenn Jones viewed the four photographic lineups at the detective bureau on February 24, 1994. Upon viewing the lineups, Jones identified Julius Banks as the man who shot Margaret Kramer.

ASSIGNMENT OF ERROR NO. 1
Defendant contends the trial court erred in denying defendant's motion to quash based on lack of jurisdiction. Defendant complains that the state failed to prove the armed robberies of Toric Jackson and Dwight Dedeaux occurred in Jefferson Parish, so that the state did not properly establish the trial court's jurisdiction over the matter.
Article I, Section 16 of the Louisiana Constitution of 1974 provides that a criminal defendant is entitled to a trial "in the parish where the offense or an element of the offense occurred, unless venue is changed in accordance with the law." Venue requirements for criminal prosecutions are also set forth under La.Code Crim.P. Art. 611, which provides, "All trials shall take place in the parish where the offense has been committed, unless the venue is changed."
Improper venue shall be raised in advance of trial by motion to quash, and shall be tried by the judge alone. Venue shall not be considered an essential element to be proven by the state at trial, rather it shall be a jurisdictional matter to be proven by the state by a preponderance of the evidence and decided by the court in advance of trial.
La.Code Crim.P. Art. 615; see also, State v. Powell, 598 So.2d 454 (La.App. 2 Cir.1992), writ denied, 605 So.2d 1089 (La.1992); State v. Byars, 550 So.2d 876, 877 (La.App. 2 Cir. 1989).
On the morning of trial, May 6, 1996, defendant filed a motion to quash the bill of information, alleging improper venue only as to the counts involving the armed robberies of Toric Jackson and Dwight Dedeaux. Counsel argued the motion the same day, although no testimony was taken on the matter. At the state's request, the trial judge deferred judgment on the motion until the end of trial, indicating that the pretrial testimony up to that point had not clarified for her the precise location of the armed robberies in question. Defense counsel agreed to the judge's decision. On May 9, 1996, after the jury retired to deliberate, the trial court denied defendant's motion to quash the bill or information.
Defendant argues, correctly, that the trial court erred in deferring its decision on the motion to quash until the end of trial. Under Article 615, the state was required to prove prior to trial that the armed robberies of Toric Jackson and Dwight Dedeaux occurred within the court's jurisdiction. Likewise, the court was required to make its decision prior to trial as to whether the state had proven by a preponderance of the evidence that the crime occurred in Jefferson Parish, and thus within its jurisdiction. See State v. Roblow, 623 So.2d 51, 54 (La.App. 1 Cir.1993). However, defense counsel consented to the court's delay in ruling; therefore defendant was not prejudiced. Moreover, the evidence adduced at trial clearly shows that the armed robberies in question *406 were committed within the trial court's jurisdiction.[2]
Toric Jackson testified at trial that prior to the robberies, he was driving his car from Orleans Parish, heading toward Jefferson Parish. He was on Monticello Street, and had just crossed the parish line into Jefferson when he and Dedeaux were accosted by the perpetrators. As the Jeep bumped his vehicle from behind, Jackson continued to drive down Monticello. Jackson's car came to a stop at the railroad tracks in Jefferson Parish. Jackson was positive the crimes occurred in Jefferson Parish. He is familiar with the area, because he lived there at one time.
Detective Snow testified that the armed robberies of Jackson and Dedeaux occurred in the 200 block of Monticello, in Jefferson Parish. Detective Russell Brunet, who responded to the robbery call in the 200 block of Monticello, testified that Monticello is the last street within the bounds of Jefferson Parish, near the levee. Based on the foregoing, we find no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 2
In his second assignment defendant asserts the trial court erred in denying defendant's Batson claim. By this assignment, defendant complains that the state used its peremptory challenges to systematically exclude black prospective jurors from his jury. Defendant argues that the state's actions were discriminatory and violated his constitutional right to a fair trial.
Equal protection guarantees that criminal defendants have the right to be tried by a jury selected by nondiscriminatory criteria. U.S. Const.Amend. 14; Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). It is well established that the use of peremptory challenges based solely on a juror's race is prohibited. Batson v. Kentucky, supra.
On a Batson claim that the prosecutor has used peremptory challenges in a manner violative of the Equal Protection Clause, a defendant must first make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of a juror's cognizable racial background. In determining whether the defendant has established a prima facie case of discrimination, the trial judge should consider all relevant circumstances, including any pattern of strikes by the prosecutor against minority jurors, and any questions or statements by the prosecutor during voir dire examination or in the exercise of his challenges which may support or refute an inference of purposeful discrimination. Batson v. Kentucky, 476 U.S. at 98, 106 S.Ct. at 1722-1723; State v. Collier, 553 So.2d 815, 819 (La. 1989).
If a prima facie case is established, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995); Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); Batson v. Kentucky, 476 U.S. at 96-98, 106 S.Ct. at 1722-1724; State v. Green, 94-0887 (La. 5/22/95); 655 So.2d 272.
The Batson criteria are codified in La. Code Crim.P. Art. 795 as follows:
C. No peremptory challenge made by the state or the defendant shall be based solely upon the race of the juror. If an objection is made that the state or defense has excluded a juror solely on the basis of race, and a prima facie case supporting that objection is made by the objecting party, the court may demand a satisfactory racially neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from the voir dire examination of the juror. Such demand and disclosure, if required by the court, shall be made outside of the hearing of any juror or prospective juror.
D. The court shall allow to stand each peremptory challenge exercised for a racially *407 neutral reason either apparent from the examination or disclosed by counsel when required by the court. The provisions of Paragraph C and this Paragraph shall not apply when both the state and the defense have exercised a challenge against the same juror.
E. The court shall allow to stand each peremptory challenge for which a satisfactory racially neutral reason is given. Those jurors who have been peremptorily challenged and for whom no satisfactory racially neutral reason is apparent or given may be ordered returned to the panel, or the court may take such other corrective action as it deems appropriate under the circumstances. The court shall make specific findings regarding each such challenge.
The record shows that only two of the first panel of thirteen prospective jurors were black: Elois Joseph and Delores Walker. The prosecutor used peremptory challenges to excuse both Joseph and Walker. The following colloquy ensued:
[Defense counsel]: Judge, I'm going to make a complaint now regarding Batson, `cause I think both of these people said they could apply the law, they could accept the law. There was no reason given why they should be excluded, and I want the record to reflect that, of these thirteen people, these are the only two black people up there; the defendant's black and the State's given no reason why he's excused.
The Court: Do you have a reason oncan I have you give a reason on both of them, State?
[Prosecutor]: The first one, on Ms. Joseph, she has twoshe has two misdemeanor arrests and her records reflect one is for a theft and one is for carrying a concealed weapon. Theft, we believe, goes to her honesty; carrying a concealed weapon; there's a weapon that was used in this case. We're concerned about that. Further, she seemed somewhat withdrawn to me, and that's why I excused her.
The Court: All right.
[Defense counsel]: I would
The Court: Ms. Walker?
[Defense counsel]: I would object to that, Judge, because I don't think that's any basis for that, any of it.
[Prosecutor]: Ms. Walker, when I was explaining about concept of principals and felony murder, I saw her look up in the air and she looked confused when I was explaining that. I have concerns that she does not understand the concepts, and they're very important concepts in this case, and would not apply them. She also sat back, was withdrawn, and didn't have eye contact with me.
[Defense counsel]: Judge, I think both of those are flimsy excuses to try to get rid of black jurors, so I'm going to note an objection for that.
[Prosecutor]: He needs you to rule on those, Judge.
The Court: Okay, I find them acceptable.
(R.Vol. 5, pp. 821-823.)
From the second panel of thirteen, the state excused black prospective jurors Lance Brown and Albert Gullage. Although defense counsel did not immediately make a Batson objection after Brown was excused, the judge directed the prosecutor to offer a race-neutral explanation for the challenge.
The prosecutor argued as follows:
Mr. Brown has been arrested and convicted of resisting arrest, our records show there are going to be police officersas well as other crimes, other misdemeanors, and he has other felony arrests. My records are going to show ...
There are going to be police officers who testify in the case. We feel that he may use that against them.
(R.Vol. 5, pp. 877-878.)
The trial court ruled that the state's explanation was acceptable under Batson.
The defense objected when the state excused another black juror, Albert Gullage. The state offered the following as a race-neutral explanation for the peremptory challenge:
The reason is that Mr. Gullage is disabled, first of all. We don'twait, no, I'm going to finish. Myhe looks to be in *408 perfect health, from where we are. My experience is, as opposed to other people, who are working and have employment at this time, they're more diligent, by and large, than are the potential disabled people; and he's wearing gold jewelryjewelry in court, which I have a problem with, as far as him being less pro-prosecution oriented; and third, he is dressed in court in a T-shirt, unlike every other juror in this case, and has not shown respect for the Court in that sense, and, therefore, for the above reasonsand he's been arrested for criminal neglect of familyall of those reasons make me want to excuse him.
(R.Vol. 5, pp. 880-881.)
The court accepted the prosecutor's explanation as race-neutral, and allowed the peremptory challenge of Mr. Gullage.
In making these rulings, the trial judge failed to make a threshold determination as to whether the defense presented a prima facie case of systematic racial discrimination. Instead, the judge proceeded to the second step of the Batson analysis, requiring the prosecutor to state race-neutral explanations for striking the black prospective jurors. The issue of whether the defense made a prima facie case of discrimination is therefore rendered moot. "Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." Hernandez v. New York, 500 U.S. at 358, 111 S.Ct. at 1866.
Defendant argues the trial court erred in accepting the state's proffered explanations as to prospective jurors Joseph, Brown and Walker because the prosecutor failed to substantiate his allegations that these individuals had criminal records. Other courts have accepted prior criminal records as legitimate race-neutral explanations for excluding jurors. State v. Dabney, 91-2051 (La.App. 4 Cir. 3/15/94); 633 So.2d 1369, writ denied, 94-0974 (La. 9/2/94); 643 So.2d 139; State v. Knighten, 609 So.2d 950 (La. App. 4 Cir.1992); State v. Powell, 598 So.2d at 462. In State v. Knighten, 609 So.2d at 957, the fourth circuit established criteria for accepting prior arrest records of prospective jurors:
We hold, therefore, that where the prosecutor uses prior arrest records as a purported race-neutral reason in response to a Batson claim, he must provide the defense attorney with evidence of those records, if the defense attorney requests further proof of the prior arrest, and that the arrest records be furnished to the trial judge and be put on the record.
The Knighten court's concern was that the defense be given sufficient notice of prospective jurors' criminal records so as to be in a position to effectively question the jurors as to the veracity and background of the arrests, and to make a record for appeal. In the instant case, as in Knighten, the prosecutor gave defense counsel no prior notice of the criminal records of the jurors in question. However, defense counsel did not immediately notify the court that he was not in possession of said records. It was not until the court recessed later in the day that counsel asked the court to order the state to turn over its jury roll. The trial judge granted counsel's request, and ordered the state to turn over the jury information in its possession. It appears the state complied with the court's order the following day.
We conclude the trial court did not err in accepting the state's explanation. Knighten requires the state to turn over information only upon the request of defense counsel. As discussed above, the state apparently complied with this procedure. Further, if the trial court erred, the error was harmless. See State v. Dabney, 633 So.2d at 1375.
Defendant argues that the state's explanation for excusing Ms. Walkerthat she was inattentive and avoided eye contactwas insufficient to show race neutrality. Defendant further complains that the prosecutor's explanation for challenging Gullage was insufficient (that he was dressed inappropriately for court and said he was disabled), showing that Gullage was excused because of his race.
In Purkett v. Elem, supra, the United States Supreme Court held that a race-neutral explanation offered by the party using a *409 peremptory challenge need not be persuasive, or even plausible. Persuasiveness of the justification only comes into play in the third step of the Batson analysis, when the trial court determines whether the opponent of the challenge has carried his burden of proving purposeful discrimination. "At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." Elem, 514 U.S. at ___, 115 S.Ct. at 1771, quoting the decision in Hernandez.
This court has held that perceived hostility, lack of interest, and unresponsiveness are race-neutral reasons to exclude prospective jurors. State v. Williams, 545 So.2d 651 (La.App. 5 Cir.1989), writs denied, 556 So.2d 53 (La.1990), 584 So.2d 1157 (La.1991). See also, State v. Durham, 94-1036 (La.App. 5 Cir. 4/16/96); 673 So.2d 1103; State v. Nieves, 94-553 (La.App. 5 Cir. 3/15/95); 653 So.2d 680. In Purkett v. Elem, supra, the court found that the prosecutor's proffered explanation that he removed a juror because he had long, unkempt hair and a beard to be race-neutral, reasoning that the wearing of a beard is not a characteristic which is peculiar to any racial group.
The nature of a Batson claim requires that we give much deference to the trial court's determinations. It is the trial judge, as opposed to reviewing courts, who is present and witnesses the entire voir dire process. In most cases, it is the trial judge who is best able to determine whether the proffered race-neutral reasons are at all grounded in facts or circumstances evidenced during voir dire. "There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenges." Hernandez, 500 U.S. at 365, 111 S.Ct. at 1869. As determinations of credibility are determinations of fact, this Court should not reverse such a finding on review.
Knighten, 609 So.2d at 954.
The trial judge was in the best position to observe the entire voir dire and, thus, to make the most informed decision as to whether the state used its peremptory challenges in a discriminatory manner. We find the trial judge did not abuse her discretion in deciding the prosecutor's explanations were race-neutral.
Once the prosecutor has satisfied the second step of the Batson review, the trial court then has the duty to determine whether the defendant has established purposeful discrimination. Batson, 476 U.S. at 98, 106 S.Ct. at 1724. In reaching a decision, the trial court should weigh the facts and arguments presented by the defense in support of its prima facie offering against the "race-neutral" reasons proffered by the state. State v. Green, 655 So.2d at 289; State v. Prout, 95-1845 (La.App. 4 Cir. 4/10/96); 672 So.2d 933. The party who alleges he has been the victim of racial discrimination carries the burden of persuasion in this third step. Batson, 476 U.S. at 94 n. 18, 106 S.Ct. at 1722 n. 18.
In this case, after finding the state's explanations race-neutral the trial court neglected to employ the third step in the Batson analysis. However, the record does not establish that defendant made a showing of purposeful discrimination. The record does not show the composition of the jury, although it appears that at least two jurors, Stephen Rainey and Leon James, were black. (The prosecutor commented that he accepted Rainey because he "couldn't think of any reasons this morning." Before accepting James, the state attempted to challenge him, but withdrew the challenge and accepted him when defense counsel requested an "explanation.")
Except for the four challenges at issue, the record does not indicate that the state used any of its 12 peremptory challenges to excuse black jurors. There are no statements or actions by the prosecution during voir dire which support an inference of racial discrimination. The prosecutor asked prospective jurors Joseph, Walker, Brown and Gullage questions about their ability to follow the law of principals and the felony murder doctrine. The prosecution also questioned these individuals as to their marital status and whether they had children. These were the same questions asked of other jurors in the venire.
*410 The defendant failed to meet his burden of proving a pattern of purposeful discrimination. Moreover, the state gave sufficient race-neutral reasons for excusing the four jurors at issue. Accordingly, we find no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 3
Defendant asserts the trial court erred in denying defendant's motion for post verdict judgment of acquittal. In his motion for judgment of acquittal, defendant alleged that the state failed to prove the elements of the charge of armed robbery of Dwight Dedeaux. La.Code Crim.P. Art. 821. Specifically, defendant argued the state did not offer sufficient evidence to prove that anything of value was taken from Dedeaux. Defendant complains that the trial court erred in denying his motion. The thrust of defendant's argument is insufficiency of the evidence.
A conviction must be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Rosiere, 488 So.2d 965 (La.1986); State v. Honore, 564 So.2d 345 (La.App. 5 Cir.1990), writ denied, 569 So.2d 968 (La.1990).
The elements of armed robbery are (1) the taking, (2) of anything of value, (3) from a person or in the immediate control of another, (4) by the use of force or intimidation, (5) while armed with a dangerous weapon. La.R.S. 14:64; State v. Cotton, 94-384 (La.App. 5 Cir. 11/16/94); 646 So.2d 1144. Dwight Dedeaux, the alleged armed robbery victim, did not testify at defendant's trial. However, Toric Jackson, the other victim in the incident, testified that defendant and his companions took something of valuea jacketfrom Dwight Dedeaux, by use of force or intimidation, while armed with a gun. In her brief to this court, defense counsel incorrectly states that Jackson did not testify that anything was taken from Dedeaux. When the prosecutor asked Jackson whether a grey leather jacket was taken from Dwight, Jackson responded in the affirmative. Demond Banks, who was also an eyewitness to the robberies, indicated that he and the other perpetrators took property from Jackson and Dedeaux. He testified that defendant took part in these robberies.
Sergeant Dennis Thornton of the Jefferson Parish Sheriff's Office, who was involved in the investigation of Margaret Kramer's murder, went to the K & B Drugstore where defendant and his companions were arrested. At trial Thornton identified State's Exhibit 28 as a photograph of the back seat of the Jeep. The photograph depicted a grey coat lying on the rear seat of the vehicle. Thornton testified that the coat belonged to Dwight Dedeaux, and had been taken in the armed robbery.[3] Jackson also identified the coat in the photograph as the one taken from Dedeaux.
The testimony of an eyewitness that he observed all the elements of the offense, coupled with an identification of the defendant as the perpetrator, ordinarily is sufficient to support a conviction. State v. Brown, 588 So.2d 1317 (La.App. 2 Cir.1991), writ denied, 592 So.2d 1298 (La.1992). If the eyewitness' testimony is riddled with numerous inconsistencies and unusual coincidences, corroboration may be required. State v. Mussall, 523 So.2d 1305 (La.1988); State v. Brown, supra.
The state was not required to prove the actual value of the jacket taken from Dedeaux, since the actual value of a thing taken is not an essential element of armed robbery. It is only necessary that the state prove something of value was taken. State v. Brady, 524 So.2d 1356 (La.App. 1 Cir.1988). Moreover, in the prosecution of an armed robbery, the state need not prove that the property taken was owned by the victim; it is only essential that the accused was not the owner, and that the victim had a greater *411 right to the item than did the accused. State v. Laird, 548 So.2d 373 (La.App. 3 Cir.1989), writs denied, 556 So.2d 54 (La.1990), 95-0916 (La. 1/26/96); 666 So.2d 668.
Based on the foregoing, we conclude that the testimony of Jackson, Demond Banks and Sgt. Thornton was sufficient to establish that defendant committed armed robbery of Dwight Dedeaux. Therefore, we find no merit to this assignment.

ASSIGNMENT OF ERROR NOS. 4 & 5 (ERROR PATENT)
Defendant asserts the trial court failed to correctly advise defendant of the prescriptive period for post conviction relief. He also assigns as error any and all errors patent on the face of the record.
Except under limited circumstances, a defendant must file his application for post conviction relief within three years after his judgment of conviction. La.Code Crim.P. Art. 930.8. Further, "[a]t the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post conviction relief." La.Code Crim.P. Art. 930.8(C). In the instant case, the trial court incorrectly advised defendant that the three year period for seeking post conviction relief commenced on the day of sentencing, rather than the date of his judgment of conviction. The trial court may remedy this error by sending written notice to defendant. See State v. Kershaw, 94-141 (La.App. 5 Cir. 9/14/94); 643 So.2d 1289. A study of the record reveals no other errors patent.

DECREE
For the foregoing reasons, defendant's convictions are affirmed. The trial court is directed to comply with the provisions of La.Code Crim.P. Art. 930.8 by sending written notice of the rights regarding post conviction relief to defendant within 10 days of the rendering of this opinion and then to file written proof in the record that defendant has received such notice.
AFFIRMED.
NOTES
[1] On May 10, 1996, the state dismissed both counts of armed robbery in case number 94-1443 as to Julius Banks and Ted Alexis only. The state also dismissed count two of the bill of information as to Demond Banks only, and amended the second count of the indictment, with respect to Demond Banks only, from second degree murder to accessory after the fact to second degree murder. Demond Banks pleaded guilty as charged to count one of armed robbery in the bill of information.
[2] In reviewing trial court's ruling on motion to quash on grounds of improper venue, the court of appeal is not limited to evidence adduced at hearing on motion, but may also consider evidence introduced at trial of case. State v. Roblow, supra.
[3] Although the officer's testimony as to whom the jacket belonged was obvious hearsay, the defense did not lodge an objection. Hearsay evidence to which no objection is made constitutes substantive evidence which may be used by the trier of fact to the extent of any probative or persuasive powers it might have. State v. Boutte, 384 So.2d 773 (La.1980); State in the Interest of B.J., 617 So.2d 238 (La.App. 5 Cir.1993).