860 So.2d 134 (2003)
STATE of Louisiana
v.
Donald JACKSON.
No. 03-KA-0417.
Court of Appeal of Louisiana, Fifth Circuit.
October 28, 2003.
*135 Paul D. Connick, Jr., District Attorney, Juliet Clark, Terry M. Boudreaux, Bradley Burget, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Margaret S. Sollars, Louisiana Appellate Project, Thibodaux, LA, for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, THOMAS F. DALEY and SUSAN M. CHEHARDY.
SOL GOTHARD, Judge.
Defendant, Donald Jackson, was convicted of theft of goods valued at over $100 and under $500 in violation of LSA-R.S. 14:67.10. Thereafter, pursuant to a habitual offender bill of information, defendant was found to be a fourth or subsequent felony offender. The defendant was sentenced to 20 years of imprisonment without benefit of probation or suspension of sentence. Defendant now appeals from his conviction and sentence.

FACTS
On July 13, 2001, Rafael Paguaga, a loss prevention department officer at the 7223 Veterans Boulevard location of K-Mart, observed defendant in the store. Defendant was wearing baggy clothes, a baggy T-shirt, and wearing a jumpsuit underneath his jeans. Paguaga followed defendant around the store for a short period of time and observed defendant conceal videotape recordings of movies in his pants. Paguaga continued to follow and observed defendant remove two phones from their boxes and conceal them in his pants as well. Defendant thereafter walked toward the store exit and exited the store without paying for the items concealed in his pants.
Paguaga followed defendant out of the store, approached him, and identified himself as being employed with K-Mart loss prevention. He asked defendant to return to the store at which time defendant continued walking. Paguaga then grabbed defendant, handcuffed him, and escorted the individual back into the store and into the security room. While in the security room, Paguaga lifted defendant's shirt and removed two cordless phones from defendant's pants. Paguaga then called the police. After the police arrived, Paguaga recovered a total of six videotapes from the defendant's pants. The total value of the merchandise recovered from defendant totaled approximately $246.00.
Robert Grant testified that, on July 13, 2001, he was employed at the 7223 Veterans location of K-Mart as an assistant manager. Grant responded to a page notifying him of a "loss prevention situation" and proceeded to the parking lot where he observed Paguaga handcuffing defendant. Grant accompanied Paguaga and defendant into the security room and observed Paguaga remove the merchandise which had been concealed in defendant's pants. Grant testified that the total retail price of the items was $246.86.
Lawrence Chaisson, a deputy with the Jefferson Parish Sheriff's Office, testified that, on July 13, 2001, he was called to the 7223 Veterans Boulevard location of K-Mart to pick up a shoplifter. Upon arrival at the scene, Chaisson proceeded to the security office where he observed defendant in the presence of Paguaga. Chaisson then observed Paguaga and another loss prevention employee removing items from defendant's pants. Thereafter, Chaisson placed defendant under arrest.

*136 ANALYSIS

In his first allegation of error, the defendant charges that the trial court erred in denying defendant's Batson challenge. Defendant contends that the trial court erred in accepting the prosecutor's race-neutral reason for peremptorily challenging an African-American juror when the juror answered that she could remain neutral to both the State and the defense. The State responds that the trial judge was able to observe the actions and demeanor of the prosecutor and, therefore, the trial court's decision to allow the peremptory challenge should be given great deference.
The Equal Protection Clause of the Fourteenth Amendment guarantees that criminal defendants have the right to be tried by a jury selected by nondiscriminatory criteria. It is well established that the use of peremptory challenges based solely on a juror's race is prohibited. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). When a defendant makes a Batson challenge, claiming the State has used peremptory challenges in a manner which violates the Equal Protection Clause, the defendant must first make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of a juror's race. State v. Loper, 00-1936 (La.App. 5 Cir. 12/26/01), 807 So.2d 316, 323; State v. Jackson, 29,470 (La.App. 2 Cir.8/20/97), 707 So.2d 990. If the defendant fails to make a prima facie case, then the challenge fails. If a prima facie case is established, the burden shifts to the State to come forward with a race-neutral explanation for its peremptory challenges. Once the prosecutor has satisfied the second step of the Batson review, by providing a race-neutral reason, the trial court then has the duty to determine whether the defendant has established purposeful discrimination. Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); Batson v. Kentucky, 476 U.S. at 96-98, 106 S.Ct. at 1722-1724; State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272; State v. Banks, 96-652 (La.App. 5 Cir. 1/15/97), 694 So.2d 401, 409. In reaching a decision, the trial court should weigh the facts and arguments presented by the defense in support of its prima facie offering against the "race-neutral" reasons proffered by the State. State v. Banks, supra; State v. Prout, 95-1845 (La.App. 4 Cir. 4/10/96), 672 So.2d 933. The party who alleges he has been the victim of racial discrimination carries the burden of persuasion in this third step. Batson v. Kentucky, 476 U.S. at 94, 106 S.Ct. at 1722; State v. Banks, supra. A trial judge's determination on a claim of purposeful discrimination rests largely on credibility evaluations, so those findings are entitled to great deference by the reviewing court. State v. Jones, 00-162 (La.App. 5 Cir. 7/25/00), 767 So.2d 862, writ denied, 00-2484 (La.6/22/01), 794 So.2d 783.
In the instant case, the State exercised a peremptory challenge to excuse Lynnette Bevrotte during the second panel of voir dire. Defense counsel objected and made a Batson challenge alleging Bevrotte to be an African-American and stated that the State had used peremptory challenges on two of the three African-American jurors. The third African-American juror was excused for cause. The prosecutor responded that he was unaware of Bevrotte's race. Thereafter, the trial judge stated the following:
If we assume that Bevrotte were an African-American, then the court would state that the only other two African-Americans the peremptory challenges were used on, were by the State. The court would find that a pattern exists. I *137 would ask you [prosecutor] to give a race-neutral reason.
The prosecutor then proceeded to provide a race-neutral reason for his exercise of the peremptory challenge stating that Bevrotte was wearing a jogging suit in the courtroom, which he felt was a sign of disrespect to the court and its authority. The prosecutor stated that he considered the wearing of shorts, a hat, or chewing gum to be equally disrespectful. Defense counsel responded that Bevrotte was wearing a velour jogging suit and noted that another juror was wearing jeans and a T-shirt. The prosecutor, however, stated that he considered a jogging suit to be different than jeans explaining that he wore jeans to nice restaurants. The trial court, thereafter, found the prosecutor's reason as race-neutral noting the prosecutor's "apparent sincere convictions."
Explanations based upon age, hairstyle, and dress, for example, are race-neutral. United States v. Clemons, 941 F.2d 321, 323 (5th Cir.1991). In Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995), the Supreme Court found that the prosecutor's proffered explanation that he removed a juror because he had long, unkempt hair and a beard to be race-neutral, reasoning that the wearing of a beard is not a characteristic which is peculiar to any racial group. See also, State v. Jones, 98-842 (La.App. 5 Cir.2/10/99), 729 So.2d 57, and State v. Banks, 96-652 (La.App. 5 Cir.1/15/97), 694 So.2d 401. Also, in United States v. Swinney, 970 F.2d 494 (8th Cir.Mo.1992), cert. denied, 506 U.S. 1011, 113 S.Ct. 632, 121 L.Ed.2d 563 (1992) and 507 U.S. 1007, 113 S.Ct. 1650, 123 L.Ed.2d 271 (1992), the Eighth Circuit found the prosecutor's reasons for peremptorily challenging a black juror as race-neutral where the prosecutor explained that the juror's wearing of dark sunglasses and "a big gold watch" showed disrespect to the judicial system.
As in the case of Swinney, the prosecutor's reason for challenging Bevrotte was based on his belief that her attire was disrespectful to the court. Furthermore, wearing a jogging suit is not a characteristic that is peculiar to any racial group. We note that the trial judge was in the best position to determine the prosecutor's sincerity in his reasons for challenging Bevrotte, and we find that the trial court did not abuse its discretion in determining the prosecution's explanations were race-neutral.
We also find that the record does not appear to establish that defendant made a showing of purposeful discrimination. Although the selected jury was all white, a review of the entire record does not reveal any actions or statements by the prosecutor that would indicate racial discrimination. Of the three black jurors, one was excused for cause, another was peremptorily challenged, the reasons for which are not included in the record, and the last juror was peremptorily challenged for what appeared to be a valid racially neutral reason.
Accordingly, we find that the trial court did not err in denying defendant's Batson challenge.
In his second allegation of error, defendant alleges that the Court erred by imposing an unconstitutionally harsh and excessive sentence. Defendant contends that his sentence of 20 years as a fifth felony offender is excessive. The State responds that the defendant did not establish that he was exceptional warranting a downward departure from the mandatory minimum sentence and, therefore, his sentence was not unconstitutionally excessive.
The United States and Louisiana Constitutions both prohibit the imposition of excessive *138 or cruel punishment. U.S. Const. amend. VIII; La. Const. art. I, § 20. The Louisiana Supreme Court has recognized that a mandatory minimum sentence under the Habitual Offender Law may still be reviewed for constitutional excessiveness. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Dorthey, 623 So.2d 1276 (La.1993). When a trial court determines that the minimum sentence mandated by LSA-R.S. 15:529.1 makes no "measurable contribution to acceptable goals of punishment," or that the sentence amounts to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime," the trial judge must reduce the sentence to one that would not be constitutionally excessive. State v. Dorthey, 623 So.2d at 1280; State v. Ventress, 01-1165 (La.App. 5 Cir.4/30/02), 817 So.2d 377, 383. However, it is presumed that the mandatory minimum sentence under the Habitual Offender Law is constitutional. State v. Johnson, 709 So.2d at 676; State v. Harbor, 01-1261 (La.App. 5 Cir. 4/10/02), 817 So.2d 223, 226. In order to rebut the presumption of constitutionality, the defendant must clearly and convincingly show that he is "exceptional, which ... means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of the case." State v. Harbor, supra at 227.
When evaluating whether the defendant has met his burden, the trial court must be mindful of the goals of the Habitual Offender Law, which are to deter and punish recidivism. Further, if the trial court finds clear and convincing evidence that justifies reducing the sentence, the court cannot impose whatever sentence it may feel is appropriate. Rather, the trial court must impose the longest sentence that is not constitutionally excessive with specific reasons to explain why that sentence is the longest sentence that is not constitutionally excessive. Johnson emphasized that a downward departure from the minimum sentence mandated by LSA-R.S. 15:529.1 should only occur in "rare situations." State v. Johnson, 709 So.2d at 677.
At the enhanced sentencing hearing, in support of his request for a sentence less than mandatory minimum of 20 years, defendant presented the testimony of his sister, Barbara Harris. Harris testified that defendant had lived at her home in the past and, at the time of his latest arrest, was living with her and her children. Harris informed the court that the reason her brother stole was to help her and her children and that the reason her brother committed his latest offense was to get money to "put some food on the table" for Thanksgiving dinner. Defendant also testified that he suffered from a terminal illness[1] and that he committed his crimes because he had to assist his sister and two nephews.
On appeal defendant argues that the mandatory minimum sentence of 20 years is constitutionally excessive based on the facts that his crimes were not violent in nature and stole in order to assist his sister and her family. The fact that defendant's crimes were non-violent in nature cannot be the sole reason, or even *139 the major reason, for declaring a sentence excessive because the defendant's history of violent or non-violent felonies has already been taken into account under the Habitual Offender Law. State v. Johnson, 709 So.2d at 676; State v. Lott, 02-702 (La.App. 5 Cir.12/30/02), 836 So.2d 584, 588. Furthermore, the trial court considered defendant and Harris's assertions that defendant stole in order to assist Harris and her children and concluded that it was not a justification for defendant's crimes, noting the various means of assistance available for individuals in defendant and Harris's situations. The trial judge also considered Harris and defendant's specific claim that defendant committed his latest offense for the purpose of securing money to purchase Thanksgiving dinner but discounted the claim noting that the defendant's offense occurred on July 13, 2001.
Additionally, defendant argues that the trial court should have made a downward departure in sentencing because of his terminal illness. In State v. Lee, 96-2392 (La.App. 4 Cir.8/13/97), 699 So.2d 461, writ denied, 99-1022 (La.9/24/99), 747 So.2d 1115, the Fourth Circuit declined to consider a defendant's HIV positive medical condition as a mitigating factor for sentencing purposes. The court stated that:
Status as HIV positive is not a legislatively recognized mitigating factor for sentencing or for deviation from the mandatory minimum sentence prescribed under the Habitual Offender Law. Although we sympathize with the defendant, the state, through the Department of Corrections, has established medical policies and procedures to manage and support these prisoners. Because HIV and AIDS are prevalent in prisons today, reasonable and compassionate policies for the management of prisoners as they progress through the stages of the disease exist.
Id. at 465. See also, State v. Alford, 99-0299 (La.App. 4 Cir.6/14/00), 765 So.2d 1120, 00-2120 (La.9/28/01), 797 So.2d 683 and State v. Miller, 00-0218 (La.App. 4 Cir.7/25/01), 792 So.2d 104, writ denied, 01-2420 (La.6/21/02), 818 So.2d 791. We find that defendant's HIV is not a factor sufficient to deviate from the mandatory minimum sentence.
Although defendant's situation is sad, we do not find that defendant has proven he is exceptional. Defendant, as a fourth or subsequent felony offender, appears to be exactly the type of offender that the Habitual Offender Statute intends to punish so severely because he continues to commit felony after felony. State v. Lindsey, 99-3256 (La.10/17/00), 770 So.2d 339, 344. Moreover, regarding defendant's illness, in the event the treatment afforded by the Department of Corrections proves inadequate, defendant can apply to the Court for relief. State v. Thomas, 556 So.2d 1349, 1352 (La.App. 5 Cir.1990), writs denied, 563 So.2d 1151 (La.1990). Defendant's allegation that the trial court erred in sentencing defendant to the mandatory minimum of 20 years of imprisonment at hard labor is without merit.
We have reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), and find none which merit consideration.
For the above discussed reasons, defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The defendant in his brief argues that he as Acquired Immune Deficiency Syndrome (AIDS); however, defendant did not introduce any testimony or evidence as to the nature of his illness. As the State notes in its brief, the only information regarding the nature of defendant's illness appears during arguments held regarding the State's notice of intent to introduce a statement made by the defendant to a witness in which the defendant allegedly stated, "I've got AIDS."