729 So.2d 57 (1999)
STATE of Louisiana
v.
James H. JONES.
No. 98-KA-842.
Court of Appeal of Louisiana, Fifth Circuit.
February 10, 1999.
*59 Katherine M. Franks, Baton Rouge, Louisiana, Attorney for Appellant James H. Jones.
Paul D. Connick, Jr., District Attorney, Alison Wallis, Counsel of Record on Appeal, Terry M. Boudreaux, Appellate Counsel, Vincent Paciera, Jr., Trial Counsel, Assistant District Attorneys, Gretna, Louisiana, Attorneys for Appellee State.
Panel composed Judges CHARLES GRISBAUM, Jr., EDWARD A. DUFRESNE, Jr. and JAMES L. CANNELLA.
CANNELLA, Judge.
Defendant, James H. Jones, appeals his conviction by a jury of possession of cocaine with intent to distribute. We affirm the conviction, but vacate the habitual offender adjudication and sentence, and remand.
Defendant was charged with a violation of R.S. 40:967 A on August 21, 1996. He was tried by a jury and convicted on January 22, 1997. On January 24, 1997, the state filed an Habitual Offender Bill of Information, alleging defendant to be a third felony offender. Following the denial of various post-trial motions on March 14, 1997, defendant was sentenced to twenty years imprisonment at hard labor. Defendant objected to the sentence and made oral motions to reconsider sentence and for appeal. On that day, defendant was arraigned on the habitual offender charge and he pled not guilty. On March 20, 1997 defendant filed a written motion for appeal and a motion to reconsider sentence. On March 21, 1997, the motion for appeal was granted and the motion to reconsider sentence was denied. On April 4, 1997, defendant admitted to being a second felony offender and the trial judge found defendant to be an habitual offender. Defendant's original sentence was then vacated and the trial judge imposed an enhanced sentence of thirty years imprisonment at hard labor.
On November 3, 1994, narcotics agents Joseph Williams and Anthony Synegal of the Jefferson Parish Sheriff's Office were assigned to an ongoing narcotics operation. Synegal's role as an undercover agent was to buy cocaine from street dealers, while Williams monitored the purchases for Synegal's protection. Synegal worked under the name of Michael Jackson. Acting on information received from a reliable confidential informant, Synegal went to the corner of Thirty-Sixth and Estalotte Streets in Harvey at 4:35 p.m. The confidential informant introduced Synegal to defendant, James Jones, then left the scene. Synegal told the defendant that he wished to buy one "ounce" of *60 crack cocaine. Synegal gave defendant $1,000 in "marked" currency and defendant gave Synegal a small block of an off-white substance.
Synegal proceeded to a predetermined location, where he met Williams and gave him the substance which he believed to be cocaine. The officers conducted a field test on the evidence and the result was positive for cocaine. Daniel Waguespack, an expert in the field of forensic chemistry, testified that he tested the substance purchased by Synegal and the result was positive for cocaine.
At 5:13 p.m. on November 3, 1994, Williams presented Synegal with a lineup consisting of six photographs. Synegal positively identified defendant as the man from whom he had purchased cocaine earlier that day. Defendant was arrested on August 2, 1996.[1]
On appeal, defendant asserts that the trial judge erred in not re-seating minority venire members as jurors where the prosecutor had no "race neutral" reason for excluding two minority persons as jurors and no "race neutral" reason for excluding another and an all white jury resulted. Next, he asserts that the evidence was insufficient to negate the possibility of misidentification and/or was incredible of belief. Third, he asserts that the habitual offender proceeding was improperly conducted. Fourth, he contends that the denial of the defense request for a pre-sentence investigation constituted an abuse of discretion. Fifth, defendant contends that the sentence is excessive and inadequately reasoned. Finally, defendant asserts all patent errors.
Defendant contends that the trial judge erred in not re-seating minority venire members as jurors where the prosecutor had no "race neutral" reason for excluding two minority persons as jurors and no "race neutral" reason for excluding another and an all white jury resulted. Defendant contends that the state exercised its peremptory challenges to purposefully eliminate all minority venire persons from the jury, thereby depriving him of a fair trial.
In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court set forth the standard to be applied in examining the use of peremptory challenges which are challenged as racially motivated. This was codified in La. C.Cr.P. art. 795, which states in part:
C. No peremptory challenge made by the state or the defendant shall be based solely upon the race of the juror. If an objection is made that the state or defense has excluded a juror solely on the basis of race, and a prima facie case supporting that objection is made by the objecting party, the court may demand a satisfactory racially neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from the voir dire examination of the juror. Such demand and disclosure, if required by the court, shall be made outside of the hearing of any juror or prospective juror.
D. The court shall allow to stand each peremptory challenge exercised for a racially neutral reason either apparent from the examination or disclosed by counsel when required by the court. The provisions of Paragraph C and this Paragraph shall not apply when both the state and the defense have exercised a challenge against the same juror.
E. The court shall allow to stand each peremptory challenge for which a satisfactory racially neutral reason is given. Those jurors who have been peremptorily challenged and for whom no satisfactory racially neutral reason is apparent or given may be ordered returned to the panel, or the court may take such other corrective action as it deems appropriate under the circumstances. The court shall make specific findings regarding each such challenge.
In Batson, the Court formulated a three-step analysis to be used in determining whether the jury selection has been unconstitutionally compromised by impermissible racial discrimination. First, a defendant making a Batson challenge must make a prima facie showing that the state has used peremptory *61 challenges to exclude prospective jurors on the basis of race. To satisfy this burden, the defendant may offer any facts relevant to the question of the prosecutor's discriminatory intent, including a pattern of strikes by the prosecutor against members of a suspect class, statements or actions of the prosecutor which support an inference that the exercise of peremptory challenges was motivated by impermissible considerations, the composition of the venire and of the jury finally empaneled and any other disparate impact upon the suspect class which is alleged to be the victim of purposeful discrimination. State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272, 288; State v. Durham, 94-1036 (La.App. 5th Cir. 4/16/96), 673 So.2d 1103, 1110-1111.
Second, if the requisite showing is made, the burden shifts to the prosecutor, who must offer a race-neutral explanation for the disputed challenge. State v. Green, 655 So.2d at 288; State v. Williams, 96-1032 (La.5/28/98), 708 So.2d 703, 726, cert. denied, Williams v. Louisiana, ___ U.S. ___, 119 S.Ct. 99, 142 L.Ed.2d 79 (1998); State v. Durham, 673 So.2d at 1111. If such an explanation is tendered, the trial court must then decide, in step three, whether the defendant has proven purposeful racial discrimination. State v. Williams, 708 So.2d at 726; State v. Durham, 673 So.2d at 1111.
The race-neutral explanation offered by the party using a peremptory challenge need not be persuasive, or even plausible. Purkett v. Elem, 514 U.S. 765, 768, 115 S.Ct. 1769, 1770, 131 L.Ed.2d 834 (1995). At this second step, the issue is simply the facial validity of the explanation. Unless a discriminatory purpose is inherent in this explanation, the reason offered will be deemed race-neutral. Purkett v. Elem, 514 U.S. at 768, 115 S.Ct. at 1771; State v. Banks, 96-652 (La.App. 5th Cir. 1/15/97), 694 So.2d 401, 408-409. Persuasiveness of the justification only comes into play in the third step, the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination. Batson v. Kentucky, 476 U.S. at 98, 106 S.Ct. at 1723; Purkett v. Elem, 514 U.S. at 768, 115 S.Ct. at 1771. At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination. Purkett v. Elem, 514 U.S. at 768, 115 S.Ct. at 1771.
During the course of voir dire, defense counsel raised a Batson claim based on the state's use of peremptory challenges to excuse black jurors Lelia Cooper, Paula Guillard and Danny Julian. Counsel further argued that the state excused Norma Perez on the basis of race, as she "appears to be Spanish."[2] Without ruling on whether the defense had made a prima facie case of racial discrimination, the court stated, "Let the State respond." The prosecutor then offered explanations for excusing the jurors at issue. In State v. Green, 655 So.2d at 288, the Supreme Court found that the trial judge's demand that a prosecutor justify his use of peremptory strikes is tantamount to a finding that the defense has presented enough evidence to support an inference of discriminatory purpose. However, once the prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the issue of whether the defendant had made a prima facie showing becomes moot. State v. Green, 655 So.2d at 288.
Paula Guillard stated that she is a court clerk for the city of Kenner. When prospective jurors were asked whether they would have trouble sitting in a drug case, she responded that she would. She explained, "[t]he people in my family that are on drugs I ah-I have them in a rehab center where I previously minister to some of the women that are in the rehab center, and I feel strongly against the ones that are out there pushing drugs." (R. pp. 180-181).
Paula Guillard was later asked whether her family's experience with drug abuse was *62 such an overwhelming influence that it would prevent her from considering a verdict of not guilty. She responded, "I don't know. I really don't. Because, as you say, with identity, working in the court system I see this every day, you know, where brothers may use brothers' names or something like that." (R., p. 184). She subsequently stated that she would be fair and that she could return a verdict of not guilty if the state failed to prove its case. She further disclosed that Synegal, who was to testify at trial, is a "very dear friend," and that she was would tend to automatically believe his testimony.
By way of explanation for his challenge of Paula Guillard, the prosecutor said:
I would state that Ms. Guillard, who's got almost purple hair, has been all over the place. Some of her answers started off by leaning one way, then it looked like she was leaning another way. She works in a court system-in a lesser court system and she talks about Kenner court and all kinds of wheeling and dealing going on in that court. That concerns me. She did say that she would believe Anthony Synegal, but she said so many other things that I don't want to rely on what she says at this point, and she just concerns me. That's the reason I'm excusing her. (R., p. 200).
The proffered explanation on its face is race-neutral. Whether the state's reasons are substantial and, more importantly, whether they are substantiated by the record, are questions for the third stage in the Batson analysis.
Leslie Cooper stated during voir dire that she is employed as a manager at a Winn-Dixie Cafeteria. She was later described by defense counsel as "an elderly black lady." She briefly answered defense counsel's hypothetical questions regarding mistaken identity. The state did not proffer any explanation for his challenge of her.
Danny Julian stated that he is a welder and that he is divorced and has two children. He made no further comments during voir dire. The prosecutor explained that he excused Julian because he had been arrested before and had been held in contempt of court. Prior criminal records are legitimate race-neutral explanations for excluding jurors. State v. Banks, 694 So.2d at 408.
Norma Perez disclosed that she is a loan officer for a finance company, and that she is not married. She commented that she thought she knew the defendant, although she stated that she could still be fair in her deliberations. In response to defense counsel's objection to his peremptory challenge of her, the prosecutor argued that the juror is not African-American, nor is she "Spanish." Essentially, the state offered no reason for striking her. The trial court made no comment on the question of whether she is a member of a cognizable racial group.
After hearing the state's proffered explanations, the trial court ruled, "I don't think there's been a showing by the defense of anything that warrants a `Batson' situation," thereby completing the third step of the Batson test. After the jury was sworn, defense counsel moved for a mistrial, arguing that, due to the state's discriminatory use of peremptory challenges, defendant was faced with a jury composed of six white males and six white females. The trial court denied defendant's motion.
For a Batson challenge to succeed, it is not enough that a racially discriminatory result be evidenced. Rather, that result "must ultimately be traced to a racially discriminatory purpose." Batson v. Kentucky, 476 U.S. at 94, 106 S.Ct. at 1721, quoting Washington v. Davis, 426 U.S. 229, 240, 96 S.Ct. 2040, 2048, 48 L.Ed.2d 597 (1976). A trial judge's determination regarding purposeful discrimination rests largely on credibility evaluations, so his findings are entitled to great deference by the reviewing court. Batson v. Kentucky, 476 U.S. at 98, n. 21, 106 S.Ct. at 1724, n. 21; State v. Williams, 708 So.2d at 726.
The prosecutor's concern about Paula Guillard's inconsistent answers is supported by the record. The prosecutor also commented on her appearance. In Purkett v. Elem, the court found that the prosecutor's explanation that he removed a juror because he had a long, unkempt beard was raceneutral, *63 reasoning that the wearing of a beard is not a characteristic which is peculiar to any racial group.
The state objected to Danny Julian on the basis of a prior arrest. In order to use prior arrest records as a purported race-neutral reason in response to a Batson claim, the prosecutor must provide evidence of those records, to the defense attorney, if he requests further proof of the prior arrest, to the trial judge and put it into the record. State v. Banks, 694 So.2d at 408; State v. Knighten, 609 So.2d 950, 957 (La.App. 4th Cir.1992). As noted in State v. Knighten, the court's concern is that the defense be given sufficient notice of prospective jurors' criminal records so as to be in a position to effectively question the jurors as to the veracity and background of the arrests and to make a record for appeal. However, in this case, defendant did not challenge the veracity of the prosecutor's assertions, nor did he request documentation of the criminal record. Thus, the state was not obligated to provide it and the arrest is sufficient reason for the state to have excused Danny Julian.
The prosecutor asserted he did not believe that Norma Perez was a member of a minority group and there is no evidence that she is a member of a minority group. In addition, the record shows that she felt that she knew the defendant, a legitimate reason for the state to excuse her.
Although the state gave no reason for having excused Lelia Cooper and she said nothing on the record to suggest a race-neutral basis for excluding her, this exclusion alone is not sufficient to support a pattern of purposeful discrimination. A review of the entire voir dire shows no comments or actions by the prosecutor which support an inference that the exercise of peremptory challenges was motivated by impermissible considerations. The state used five other peremptory challenges in addition to the four at issue, striking white jurors. Furthermore, the challenges of Danny Julian, Paula Guillard and Norma Perez are supported by legitimate grounds. In addition, the decision of the trial judge, who was in the best position to judge the credibility of the prosecutor, must be afforded a great deal of weight. Based on our review, we find that the trial judge did not err in denying the Batson claim.
Defendant next asserts that Synegal's identification was insufficient to prove that he was the person from whom the officer purchased cocaine on November 3, 1994.
The constitutional standard for testing the sufficiency of the evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Ortiz, No. 96-1609 (La.10/21/97), 701 So.2d 922, 930; State v. Styles, 96-897 (La.App. 5th Cir. 3/25/97), 692 So.2d 1222, 1232.
In order to prove guilt by circumstantial evidence, the state must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. This is not separate from the Jackson standard. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Ortiz, 701 So.2d at 930.
Encompassed in proving the elements of the offense is the necessity of proving the identity of the defendant as the perpetrator. State v. Lott, 97-1002 (La.App. 5th Cir. 5/27/98), 712 So.2d 289, 291; State v. Rowan, 97-21 (La.App. 5th Cir. 4/29/97), 694 So.2d 1052, 1054. When the key issue in the case is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Lott, 712 So.2d at 291; State v. Rowan, 694 So.2d at 1054.
Synegal testified that he purchased cocaine from the defendant during daylight hours. The two stood face-to-face and there was nothing to interfere with Synegal's view of defendant during the transaction. Synegal identified the defendant from a photographic lineup less than one hour after the sale took place. He testified that the perpetrator's *64 face was still fresh in his mind when he viewed the lineup. Both Synegal and Williams testified that Williams did not in any way suggest to Synegal which photograph he should select.
Defendant argues that Synegal's testimony was refuted by evidence that other identifications the officer made during the course of the narcotics operation were inaccurate. Synegal testified that, in over six hundred drug buys, he has never been mistaken in an identification. However, defendant introduced prison documents which showed that Harold Ridgeley and David Lackey, two men whom Synegal had identified as cocaine dealers during the course of his undercover investigation, were actually incarcerated on the days Synegal claimed to have bought drugs from them. The state in turn produced court records to show that Daniel Lackey was accused of selling drugs to Synegal on two separate occasions and that one of those instances occurred before his incarceration.
Defendant also produced the alibi testimony of his fiancee, Chanel Jones, and her friend, Patrice Dangerfield, who stated that the defendant was living with them in Baton Rouge in November of 1994. Defense witness Alex Washington, who at the time of trial was incarcerated for a drug conviction, testified that in November of 1994, he regularly "hung out" at the corner of Estalotte and Thirty-Sixth Streets. He stated that he has often been mistaken for defendant. When asked whether he sold cocaine to Synegal on November 3, 1994, Alex Washington declined to answer on Fifth Amendment grounds.
Where the resolution of conflicting testimony about factual matters is dependant upon a determination of witness credibility, it goes to the weight of the evidence, not the sufficiency of it. State v. Rowan, 694 So.2d at 1056. In this case, the jury made credibility determinations and accepted the testimony of the state's witnesses as true. It is not the function of the appellate court to assess the credibility of witnesses or to reweigh the evidence. Id. at 1056.
In this case, although the defense may have called into question Synegal's identifications as to David Lackey and Harold Ridgeley, the state produced sufficient evidence to negate any reasonable probability of misidentification as to defendant. Moreover, defendant's alibi testimony is inconclusive. Although defendant might have made his home in Baton Rouge in November of 1994, the testimony of Chanel Jones and Patrice Dangerfield leaves open the possibility that he was in Harvey on the day in question. Thus, we find that the state negated any reasonable probability of misidentification and carried its burden of proof.[3]
Defendant next complains that the habitual offender proceeding was improperly conducted. Defendant contends that he was not properly advised of his rights prior to admitting to being a second felony offender.
Louisiana jurisprudence has consistently held that in an habitual offender proceeding in which defendant pleads or admits to any allegation in the bill of information, the trial court must advise a defendant of his right to a hearing at which the state is required to prove the allegations of the habitual offender bill, and of his right to remain silent. La.R.S. 15:529.1 D(1)(a); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132, 1135; State v. Rose, 97-943 (La.App. 5th Cir. 1/27/98), 708 So.2d 1093, writ denied, 98-0673 (La.8/28/98),723 So.2d 416, 1998 WL 755080. The failure to so advise a defendant is generally reversible error when defendant pleads to any of the allegations in the habitual offender bill of information. State v. Cummings, 668 So.2d at 1135. If the state presents other evidence to prove the prior convictions, the error does not require reversal. State v. Robinson, 95-358 (La.App. 5th Cir. 11/15/95), 665 So.2d 451.[4] Furthermore, *65 if the transcript shows that defendant understood that he was waiving his rights, even though he was not specifically advised that he was waiving his rights, the error is harmless. See: State v. Rose, 708 So.2d at 1095; State v. Wheelwright, 615 So.2d 385, 389 (La.App. 5th Cir.1993), writ denied, 619 So.2d 576 (La.1993);
In State v. Wheelwright, 615 So.2d 385, 389 (La.App. 5th Cir.1993), writ denied, 619 So.2d 576 (La.1993), this Court found that the failure of the trial judge to specifically instruct defendant that he had the right to remain silent at the habitual offender proceeding did not prevent defendant from intelligently waiving his rights and entering an admission to the allegations in the habitual offender bill. However, in that case, the judge addressed Wheelwright, who stated he agreed with the "plea," that he understood his right to a hearing, and that he wished to waive a hearing.
In State v. Rose, the trial judge did not specifically advise the defendant of his right to remain silent before accepting his admission to the allegations in the habitual offender bill. On review, this Court found that the record demonstrated a valid waiver of rights because the terms of the habitual offender bill and the plea agreement were discussed in court and the trial judge specifically addressed the defendant to make sure he understood the terms of the stipulation. See also: State v. Jackson, 96-783 (La.App. 5th Cir. 1/28/97), 688 So.2d 123; State v. Carruth, 94-147 (La.App. 5th Cir. 9/27/94), 643 So.2d 1319.
The transcript of the habitual offender proceedings contains the following colloquy:
Mr. Spears [defense counsel]: Your Honor, Mr. Jones is present in court. After discussing the matter with Mr. Jones and reviewing the documentation afforded to us by the State at this time, he will forego a formal hearing in this matter and admit that he is in fact a second felony offender.
The Court: Accordingly, he stipulates that he is an offender under the multiple statute?
Mr. Spears: That is correct, Your Honor.
The State: And that there has been no cleansing period.
Mr. Spears: Right. He's a bonifide (sic) second felony offender under the habitual offender law. (R., p. 404).
In this case, the state failed to produce any evidence as to the alleged prior convictions. Additionally, there is nothing in the record to indicate that defendant understood he was entitled to a trial and to remain silent. Unlike State v. Wheelwright or State v. Rose, the trial judge here did not verbally advised defendant of his rights or address defendant at all. There is also no showing as to what, if anything, counsel told the defendant in this regard. Since the record lacks any evidence that defendant knowingly and voluntarily waived his rights, we find that the habitual offender adjudication must be vacated and remanded.[5]
Accordingly, the defendant's conviction of possession of cocaine with intent to distribute is hereby affirmed. We vacate defendant's habitual offender adjudication and sentence and remand.
CONVICTION AFFIRMED; HABITUAL OFFENDER ADJUDICATION AND SENTENCE VACATED AND REMANDED.
NOTES
[1] Synegal testified that he made over six hundred narcotics purchases during the course of the undercover operation. Arrests were not made until the operation was completed.
[2] Defendant is not Hispanic, but African-American. However, the Supreme Court has stressed that its holding in Batson does not require the defendant to show that he is a member of the same cognizable racial group as the one whose members have been excluded from the jury. See: Holland v. Illinois, 493 U.S. 474, 477, 110 S.Ct. 803, 805, 107 L.Ed.2d 905 (1990).
[3] State v. Rowan involved another purchase of drugs by Synegal in the course of the same undercover operation.
[4] In those cases that defendant does not plead, but is tried and convicted as an habitual offender, the failure to advise defendant under R.S. 15:529.1 D(1)(A) is generally considered to be harmless error State v. Allen, 93-838 (La.App. 5th Cir. 5/31/94), 638 So.2d 394, 403; State v. Washington, 563 So.2d 530, 533 (La.App. 5th Cir. 1990).
[5] Because of this finding, we need not address the sentencing issues. We note, however, that the trial judge did not specify whether he found defendant to be a second or third offender.