I,DUFRESNE, Judge.
The Jefferson Parish District Attorney filed a bill of information charging the defendant, Mervyn Williams, with two counts of distribution of cocaine, in violation of LSA-R.S. 40:967 A, and one count of illegal carrying of a weapon while in possession of a controlled dangerous substance, in violation of LSA-R.S. 14:95 E. The distribution of cocaine charges proceeded to a jury trial in June of 1996, at the conclusion of which the defendant was found guilty as charged. As to these two charges, the court sentenced the defendant to fifteen years at hard labor on each count, to be served consecutively. The defendant thereafter filed a motion to reconsider the sentences. By an order signed on January 6,1997, the court vacated the sentences; however, the defendant was not re-sentenced on these two counts.
In January of 1998, the defendant proceeded to trial on the charge of illegal carrying of a firearm while in possession of a controlled dangerous substance. At the conclusion of the trial, the jury found the defendant guilty |?as charged. With regard to this count, the court sentenced him to ten years at hard labor without benefit of parole, probation, or suspension of sentence. The judge ordered that this ten year sentence be served concurrently with the two fifteen year sentences which had already been vacated. The defendant thereafter filed a motion for appeal.
In an opinion issued on January 26, 1999, this court dismissed the defendant’s appeal and remanded the case to the district court for re-sentencing on the distribution of cocaine charges. The opinion provided that the defendant’s appeal rights would be reinstated once sentences had been imposed. See State v. Williams, 98-769 (La.App. 5 Cir. 1/26/99), 726 So.2d 514. On April 6, 1999, the trial court denied the defendant’s motion to reconsider his sentences. The court then re-sentenced the defendant to fifteen years at hard labor on each count, to be served concurrently. It is in this posture that the case is presently before this court.

FACTS

In August 1994, Agent Anthony Synigal of the Jefferson Parish Sheriffs Office took part in an undercover narcotics oper *1214 ation called Project Star. He purchased drugs from suspected dealers, using the code name Michael Jackson. Synigal wore a hidden transmitter to allow backup officers to listen to the transactions. The operation focused on an area in Marrero known as “Walker Town,” as there had been numerous complaints of drug activity there.
On August 28, 1994, Synigal went with a confidential informant to the 1300 block of Marshall Drive in Marrero. Detective Do Tran and Agént Belmont, the backup officers, were stationed in a car about one-half block |3away. The informant introduced Synigal to the defendant, but then stepped away so as not to be involved in the transaction. Synigal testified that he asked the defendant for ten rocks of crack cocaine. The defendant went into an apartment and returned with what appeared to be crack. The officer paid the defendant two hundred dollars in cash for the crack. Agent Synigal gave the evidence to Agent Barry Morton at a pre-arranged location.
On the afternoon of August 26, 1994, Synigal went with the confidential informant to the same location and purchased one quarter ounce of crack cocaine from the defendant for two hundred fifty dollars. Again, the informant was not involved in the transaction. On that day, Lieutenant Jerald Monnerjahn and Agent James Johnson were the backup officers. They listened to the transaction from a remote position and met with Synigal after the buy took place. Johnson testified that he took possession of the evidence and performed a field test on it. The test was positive for cocaine. One month later, Sy-nigal identified the defendant in a photographic lineup[1] as the man from whom he purchased crack cocaine on August 23 and 26, 1994. The officer also identified the defendant at trial.
Charles Krone, a forensic scientist with the Jefferson Parish Sheriffs Office, testified at trial that he tested the rocks purchased by Synigal on August 23 and 26, 1994, and that the results were positive for cocaine.[2]
| SUFFICIENCY OF THE EVIDENCE
On appeal, the defendant challenges the sufficiency of the evidence used to convict him of distribution of cocaine. He specifically contends that Agent Synigal’s identification was insufficient to prove that he was the person who sold crack cocaine on August 23 and 26,1994.
The standard for reviewing the sufficiency of the evidence is whether, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Rosiere, 488 So.2d 965 (La.1986); State v. Jordon, 98-823 (La.App. 5 Cir. 3/10/99), 732 So.2d 569. In addition to proving the statutory elements of the charged offense at trial, the state is required to prove the identity of the perpetrator. Moreover, where the key issue in the case is identification, the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Jones, 98-842 (La.App. 5 Cir. 2/10/99), 729 So.2d 57.
In the instant case, Agent Synigal was the only witness who was in a position to make an identification. The defendant contends that Synigal’s identification was unreliable because he did not have sufficient opportunity to view the suspect. To support his argument of an unreliable identification, the defendant also points to the fact that the description Synigal made *1215 of the suspect after the first transaction differed from the one |fihe gave after the second transaction. The defendant further asserts that the identification, which was made a month after the drug transactions, was too remote from the purchases to have been accurate.
We have considered the arguments presented herein and find that the state proved beyond a reasonable doubt the identity of the defendant as the perpetrator. At trial, Agent Synigal testified that each transaction lasted only a couple of minutes and that he had never previously seen the suspect. However, the agent, who is trained to look at a drug dealer’s face in order to make an identification, stated that he got a good look at the suspect’s face. It is further noted that both transactions took place during daylight hours.
When asked about the discrepancies in his descriptions, Synigal testified that on August 23, 1994, he described the suspect as 5’ 6” tall and weighing 140 pounds. On August 26, 1994, he described the suspect as 5’ 6” tall and weighing 180 pounds.[3] Synigal testified that his second description differed from the first because he was able to get a better look at the suspect during the second transaction, and he was thus able to reassess the defendant’s weight. It is also noted that Synigal was seated in his car during the transactions, and thus was not in the best position to assess the suspect’s height. In any case, Synigal stated that he knows by the defendant’s face that he was the person who sold him the crack cocaine. The officer, with certainty, positively identified the defendant in a photographic lineup and in court as the person who had sold him the crack | ficocaine.
In the present case, the issue of identification hinged on Agent Synigal’s credibility. The jury made credibility determinations and accepted Synigal’s testimony. It is not the function of the appellate court to assess the credibility of witnesses or to reweigh the evidence. State v. Jones, supra. Thus, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded that the state proved beyond a reasonable doubt that the defendant was guilty of two counts of distribution of cocaine and that it negated every reasonable probability of misidentification. Accordingly, we find the defendant’s claims of insufficiency of evidence to be without merit.

EXCESSIVE SENTENCE

In this assigned error, the defendant complains that the sentences imposed for the two distribution of cocaine convictions are constitutionally excessive, pointing to the fact that he is a first felony offender. The defendant also argues that the trial court failed to comply with the provisions of LSA-C.Cr.P. art. 894.1 in that it failed to take mitigating factors into account and also failed to state for the record the factual basis for the sentence.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739 (La.1992); State v. Munoz, 575 So.2d 848 (La.App. 5 Cir.1991), writ denied, 577 So.2d 1009 (La.1991). In reviewing a sentence for excessiveness this Court must consider 17the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock our sense of justice. The trial judge is afforded wide discretion in determining a sentence, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. McCorkle, 97-966 (La.App. 5 Cir. 2/25/98), 708 So.2d 1212.
*1216 The defendant was convicted of two counts of distribution of cocaine. Based on the sentencing provision in effect at the time of the commission of the offenses, the defendant was exposed to a possible sentence of five to thirty years at hard labor on each count, and in addition, faced a possible fine of not more than $50,000.[4] The court sentenced the defendant to fifteen years at hard labor on each count to run concurrently. The defendant complains that these sentences are excessive.[5] We find that the record supports the sentences imposed.
In the present case, although the trial court did not specifically articulate reasons for the imposition of the sentences, he stated that he carefully considered the sentencing guidelines as well as the nature of the offenses. Moreover, it was apparent from the pre-sentence investigation report and from other information available to the judge that the defendant was involved in serious criminal activity. While the defendant did not have any standing convictions at the time he was convicted of the instant offenses, the pre-sentence investigation report noted that he had a pending | sfirst degree murder charge and a history of trafficking in drugs and weapons. Based on the foregoing reasons, we find that the trial court did not abuse its wide discretion in imposing two concurrent fifteen year sentences on this particular defendant. Accordingly, we find that the arguments raised by the defendant in this assignment of error lack merit.

ERRORS PATENT REVIEW

We have also reviewed the record for errors patent in accordance with LSA-C.Cr.P. art. 920 and State v. Oliveaux, 312 So.2d 337 (La.1975). Such a review reveals no errors patent.
For the reasons set forth herein, the defendant’s convictions and sentences are hereby affirmed.

AFFIRMED.

. Once this identification was made, a warrant was issued for the defendant's arrest; however, he was not actually arrested until after the operation was completed, so as to avoid revealing the identity of the undercover officer.

. On appeal, the defendant does not raise any errors pertaining to either his conviction or sentence on the illegal carrying of a firearm charge. Therefore, the facts surrounding that offense are not discussed herein.

. The court allowed the defendant's height to be measured in court, and defense counsel stated the measurement was 5’9”. The defendant’s arrest register dated November 25, 1995, lists his height as 5’6” and his weight as 180 pounds.

. The penally provision was subsequently amended to provide that the first five years of the sentence be served without benefit of parole, probation or suspension.

. The defendant actually complains that his sentence of thirty years is excessive. While the defendant was originally sentenced to two consecutive fifteen year terms, on re-sentencing, he was given two concurrent fifteen year terms. Thus, the total incarceration time for the two offenses was fifteen, rather than thirty, years.