446 So.2d 1381 (1984)
STATE of Louisiana
v.
Henry SANFORD.
No. 83 KA 1010.
Court of Appeal of Louisiana, First Circuit.
February 28, 1984.
Ossie B. Brown, Dist. Atty. by Jeffrey Hollingsworth, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
M. Michele Fournet, Appellate Counsel, Asst. Public Defender, Baton Rouge, for defendant-appellant.
Before SHORTESS, LANIER and CRAIN, JJ.
LANIER, Judge.
The defendant, Henry Sanford, was jointly indicted for aggravated rape in violation of La.R.S. 14:42 and armed robbery in violation of La.R.S. 14:64. He pled not guilty, was tried by a jury and found guilty as charged. On the aggravated rape charge, he was sentenced to be committed to the custody of the Louisiana Department of Corrections at hard labor for life without benefit of probation, parole or suspension of sentence. On the armed robbery charge, he was sentenced to be committed to the custody of the Louisiana Department of Corrections at hard labor for ninety-nine years without benefit of parole, probation or suspension of sentence. The trial court ordered that the sentences be served consecutively to each other and consecutively "to any other sentence that the defendant may be condemned to serve at this time." This appeal followed.

FACTS
On November 23, 1982, a male student (companion) and a female student (victim) from Louisiana State University, who had *1382 been dating each other for some time, went to lunch at a local restaurant in Baton Rouge, Louisiana. At approximately 2:00 p.m. after lunch was completed, the couple went to the Picnic Hill area of the City Park on Dalrymple Drive. While the couple was sitting in the park, they observed a man (subsequently identified as Henry Sanford) approaching with a dog following him. The man pointed a gun (which appeared to be a small caliber automatic pistol) at the couple and asked the companion if he were "Billy". The companion advised that he was not "Billy" and showed the man identification. The man ordered the couple to walk back to the companion's car (a brown four door 1974 Toyota Corona with a South Dakota plate) to wait for "Billy".
After arriving at the car, the man ordered the couple into a small storage shed nearby. Inside the shed, the man kept the gun pointed at the couple and told them to "freak out". He then made the couple strip and perform oral sex on each other. He then ordered the victim to lay on the ground. The man told the companion not to move or the victim would die. He then had intercourse with the victim while he held the gun to her head.
After the rape, the man ordered the couple to dress. After the couple dressed, the man ordered the companion to empty his pockets. The companion produced his car keys, wallet and some change. He also had a checkbook and an A & P check cashing card belonging to the victim which he was holding for her. The man took all of these items.
The man told the couple to remain in the shed because he had a partner on the outside who would kill them if they attempted to leave. When leaving the shed, the man put a stick in the door latch to keep the couple in. He then drove off in the companion's car. Immediately thereafter, the couple escaped from the shed and called the police.
On the evening of November 23, 1982, the companion's car was found abandoned in another location in Baton Rouge, Louisiana. Fingerprints were lifted from the inside surface on the driver's door glass and from the windshield wiper knob of the car. These fingerprints were subsequently identified as the left index and right thumb prints of Lawrence Pierre.
On November 24, 1982, the victim identified Henry Sanford from a photographic lineup. Based on this information, a warrant was issued for Sanford's arrest on that same date.
On November 29, 1982, the companion also identified Sanford from a photographic lineup.
Sanford was arrested by the Baton Rouge City Police on December 20, 1982. After being advised of his Miranda rights, he voluntarily gave a statement to Investigator Charles Mondrick contending that he did not commit the crime and asserted that it was committed by a person who looked like him named Lawrence Pierre. Because of this statement and the fact that Pierre's fingerprints were found on the recovered vehicle, Pierre was arrested on December 21, 1982. On December 22, 1982, the police conducted two separate physical lineups in the presence of the victim. Each lineup had six persons with similar appearances. Lawrence Pierre was placed in the first lineup and Henry Sanford was placed in the second. The victim picked Sanford from the second lineup and identified him as the person who committed the crimes. The victim and companion also made in-court identifications of Sanford.
At the trial, Lawrence Pierre testified that on November 23, 1982, at approximately 2:00 or 3:00 p.m., he saw Henry Sanford at the Tombstone Baseball Park near Port Allen, Louisiana, driving a little brown car that might have been a Toyota. Pierre (who previously knew Sanford) looked at the car and got in it on the passenger's side. Thereafter, Sanford left the area of the park and Pierre also left.
Barbara Venable, a worker for the Louisiana State University Traffic Department, testified that she knew Henry Sanford and Lawrence Pierre. She saw Lawrence *1383 Pierre on November 23, 1982, between 3:30 and 5:00 p.m. at the Tombstone Lane driving a small brown car. Venable was talking to Henry Sanford at that time. Pierre asked Sanford to go for a ride but he declined. Pierre then drove off.

OTHER CRIMES EVIDENCE
Sanford contends that the trial court committed prejudicial error when it allowed the state to introduce evidence that a check belonging to the victim which was taken from the companion was forged and cashed at the A & P Food Store located at 3380 Government Street in Baton Rouge, Louisiana, on November 23, 1982. Sanford contends that the evidence of the forgery is not part of the res gestae and should have been excluded.
At the trial, the victim and companion testified that after Sanford took the victim's checkbook from the companion he asked the victim if she could cash a check. She responded that she could not because there was no money in the account. Sanford then said that he had a woman friend who could cash a check at A & P. He told the couple he was going to the A & P to cash a check and would be back in twenty minutes. The victim testified that she had a share draft account with her father at the Ethel Employees' Federal Credit Union. When the checkbook was taken, checks 492 through 500 were in the book. Counsel for the state gave check No. 492 (State Exhibit S-7) to the victim and she identified it as the next unused check from her checkbook. The victim examined check No. 492 and said that it had been filled out by someone other than herself or her father. All of this testimony was received without objection.
When the state called Donald Massey, the Co-manager of the A & P Food Store located at 3380 Government Street in Baton Rouge, Sanford's counsel objected on the grounds that the purpose of his testimony would be to show the cashing of check No. 492 and that this would be inadmissible evidence of other crimes (forgery). The court overruled the objection and counsel for Sanford made the objection continuing to all further evidence on this issue. Massey then testified that check No. 492 was presented at his store for the purchase of food on November 23, 1982. An inquiry was made to "Checkfack's" to see if the check would clear and, when a positive response was given, he initialed it and approved it. An A & P check cashing card number was placed on the check by the cashier. Massey had no independent memory of who issued the check.
The state then called Joseph B. Crawford, the Manager of the A & P store at 3380 Government Street. He testified that in December of 1982, he contacted Sergeant Fred Sanders of the Baton Rouge City Police about a forged check (No. 492) and subsequently gave the check to Sanders. The state called Sergeant Fred Sanders of the Baton Rouge City Police who testified that on December 20, 1982, he went to the A & P Food Store and got the check from the Manager, J.B. Crawford. Sanders put his initials, the date and his case file number on the check. The handwriting on the check was not analyzed.
The general law applicable to other crimes evidence is found in State v. Haarala, 398 So.2d 1093, 1097 (La.1981) as follows:
As a general rule, the prosecution may not introduce evidence of other criminal acts of the accused unless the evidence is substantially relevant for some purpose other than to show that the accused is a bad man and thus more likely to have committed the crime. State v. Monroe, 364 So.2d 570 (La.1978); State v. Sutfield, 354 So.2d 1334 (La.1978). This rule results from the belief that admission of this type character evidence creates a great risk of unjust convictions because the jury is likely to give the evidence excessive weight and convict the defendant merely because he is a bad man, because the defendant may well be unprepared to face such attacks, and because the jury is likely to be confused by proof of collateral issues. State v. Prieur, 277 So.2d 126 (La.1973); Comment, *1384 Other Crimes Evidence in Louisiana, 33 La.L.Rev. 614 (1973).
The general prohibition against the use of other crimes evidence does not bar admission of criminal acts which are an inseparable part of the whole deed. 1 Wigmore, Evidence § 218 (3d ed. 1940). In Louisiana, such acts are denominated as part of the res gestae and admitted under the authority of La.R.S. 15:447-48. A very close connexity between the charged offense and the other crimes evidence sought to be introduced under the res gestae exception is required. See State v. Schwartz, 354 So.2d 1332, 1334 (La.1978) and cases cited therein. This close connexity in time and location is essential to the exception because no notice of the state's intention to introduce evidence of offenses which are part of the res gestae is required. See La.C. Cr.P. art. 720; State v. Prieur, supra; Pugh, Louisiana Evidence Law 100-01 (Supp.1978) excerpting 35 La.L.Rev. 525, 526-27 (1975).
This Court has approved the admission of other crimes evidence when it is related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it. State v. Boyd, 359 So.2d 931, 942 (La.1978); State v. Clift, 339 So.2d 755, 760 (La.1976). In such cases, the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place. McCormick, Law of Evidence 448 (2d ed. 1972). The concomitant other crimes do not affect the accused's character, because they were done, if at all, as parts of a whole; therefore, the trier of fact will attribute all of the criminal conduct to the defendant or none of it. And, because of the close connection in time and location, the defendant is unlikely to be unfairly surprised. 1 Wigmore, Evidence § 218 (3d ed. 1940).
See also State v. Kahey, 436 So.2d 475 (La.1983) and State v. Craddock, 435 So.2d 1110 (La.App. 1st Cir.1983).
Sanford was indicted for the armed robbery of the companion. Armed robbery is defined in La.R.S. 14:64 as follows:
Armed robbery is the theft of anything of value from the person of another or which is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
One of the items taken from the person of the companion by Sanford was the victim's checkbook containing check No. 492. Check No. 492 is direct evidence of what was taken during the armed robbery of the companion. It is not essential to the crime of armed robbery that the checkbook and check were owned by the victim; it is only essential that Sanford was not the owner and that the companion had a greater right to possession of the checkbook and check at the time of the taking than did Sanford. State v. McClanahan, 262 La. 138, 262 So.2d 499 (1972); State v. Morales, 256 La. 940, 240 So.2d 714 (1970); State v. McGuire, 173 La. 871, 138 So. 867 (1931); State v. Babineaux, 146 La. 290, 83 So. 558 (1919). The fact that the check was negotiated is also direct evidence that it was something of value.[1] The state is permitted to present to the jury the criminal act charged in its entirety, for to hold otherwise would require that the state present only a part of the sequence of events which formed the criminal transaction. State v. Brown, 428 So.2d 438 (La.1983). The state had a right to show how the items taken in the armed robbery (car and check) were recovered. Because the stolen check was cashed a short time after the armed robbery, that event formed one continuous chain of events with the crime and was within the res gestae. State v. Molinario, 383 So.2d 345 (La.1980).
*1385 This assignment of error is without merit.

DECREE
For the foregoing reasons, the defendant's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] After Sanford presented evidence contradicting his identification by the victim and the companion as the perpetrator, this evidence also could be used to corroborate their testimony. La.R.S. 15:484 and 485; State v. Talbot, 408 So.2d 861 (La.1980).