11 JONES, Judge.
Defendant/appellant, John I. McCormick, appeals his conviction and sentence as a multiple offender for having committed the crime of armed robbery. McCormick was found guilty as charged and sentenced to serve forty-nine and one-half years imprisonment. After a review of the record, reverse.

FACTS AND PROCEDURAL HISTORY

John Powell testified at trial that the victim, Roy Smith, his stepson, had lived with him for approximately two years. Roy, who was nineteen years old at the time of trial, had the mental capacity of a seven-year-old because he suffered from Downs’s syndrome. Powell testified that he purchased a puppy for Roy from a stranger. Powell testified that McCormick took the puppy from Roy at gunpoint. Powell also testified that McCormick admitted to him that he went to Powell’s house to get his (McCormick’s) puppy back, and that McCormick said to him that “he had to do it the way he did it because that’s the way he handled things.” Powell then requested from McCormick a return of the money he spent for the puppy, but McCormick refused to pay him. Powell asked another member of McCormick’s Lfamily to reimburse him for the cost of the puppy, but they also refused. Powell later admitted that he had a prior conviction for attempted cruelty to a juvenile.
On cross-examination, Powell testified he purchased the puppy for twenty dollars from a stranger standing on a street corner with one dog. He testified that the man told him the puppy belonged to him.
New Orleans Police Detective Arthur Powell, a relative of John Powell, testified that on August 18,1997, he investigated an armed robbery, which was reported thirty-six hours after its occurrence. Det. Powell testified that the victim and his father went to the First District police station to report the armed robbery, and following his investigation, he learned that McCormick had gone to the house, produced a gun, and demanded the return of his puppy. Det. Powell then compiled a photographic lineup, and Roy unhesitatingly identified McCormick as the person who allegedly robbed him. Det. Powell subsequently obtained a search warrant for *928 McCormick’s residence and an arrest warrant for McCormick. When Det. Powell went to McCormick’s residence, he found three dogs in a cage in McCormick’s bedroom, including the puppy in question. Det. Powell photographed the dogs for evidentiary purposes. Because Det. Powell testified that he was not certain who actually owned the dog, he did not return the puppy to Roy or Mr. Powell. However, Det. Powell did not find a weapon in the defendant’s home during the search. Det. Powell testified that the police report did not contain a description of the gun allegedly used in the crime, but did state that Mr. Powell paid fifty dollars for the puppy.
The victim, Roy Smith, who was determined to be competent to testify, testified that his stepfather bought a pit bull puppy for the family. As he was coming home with the puppy, Smith heard McCormick asking one of Smith’s |3neighbors if he knew anyone living next door who had his dog. Smith testified that he was proceeding up the stairs leading to his porch when McCormick approached him with a gun, and demanded to know where his dog was. The victim testified that he did not know what he meant. Smith testified that McCormick was cursing him, so he asked McCormick to stop cursing and talk “right” to him. With his weapon still pointing at the victim, McCormick ordered him to get the dog or he would blow his head off. Smith got the dog and gave it to him.
Smith testified that after the incident, he was asked to identify the perpetrator from some photographs he was shown. Smith testified that he identified McCormick as the assailant. Smith also identified McCormick in court on the date of trial. Smith testified that McCormick later called Smith and told him to “watch his back” because McCormick was placed in jail. Smith also identified the puppy from the photograph taken in McCormick’s home by Det. Powell.
Margaret Bertrand, McCormick’s grandmother, testified that he lived with her prior to his arrest. She said he had four pit bills, including the puppy in question, named Nyla. She learned that Nyla had gotten out of the house at some point. Ms. Bertrand, who identified Mr. Powell in court, testified that Mr. Powell telephoned her and asked if she wanted him to drop the charges against McCormick. She replied in the affirmative, and Powell said he would do so if she would give him three hundred dollars. Ms. Bertrand testified that she told Mr. Powell that she did not have three hundred dollars. About two or three weeks later, Mr. Powell knocked on her door, inquiring whether she had changed her mind. Ms. Bertrand testified that she did not see McCormick with a gun, and did not see a gun around the house when McCormick lived there.
RNedrelda Ackerson, McCormick’s cousin, testified that she had seen several puppies in McCormick’s home when she went to visit, including Nyla. She also testified that Mr. Powell requested three hundred dollars from her in exchange for dropping the charges against McCormick. Ms. Ack-erson, testified that Mr. Powell told her that the money would be used to compensate his son. Further, Ms. Ackerson testified that she did not see a gun at McCormick’s residence.
McCormick testified that he resided with his grandmother prior to his arrest. He admitted to convictions for possession with intent to distribute marijuana and cocaine, and possession of marijuana. He testified that he bred pit bulls, and he identified the three dogs he had at his residence. After viewing a photograph of three dogs, he testified that the three dogs were Nyla, Nyla’s mother, and Nyla’s sibling. He testified that he had owned Nyla since birth, and he produced registration papers for Nyla’s mother, which showed that she would have only been approximately six months old at the time of Nyla’s birth. He did not have any registration papers on Nyla.
*929 McCormick testified that his sister had allowed Nyla to get away one day, and he learned where his puppy was from a friend. He testified that when he went to Roy Smith’s door, the dog came to the door, and he told Smith that it was his dog. McCormick denied pointing a gun at Smith, and testified that he did not own a gun. McCormick then took his puppy and left. Because Smith was home by himself, McCormick testified that he told one of Smith’s neighbors to tell Smith’s stepfather that he took the dog because it was his. McCormick testified that Mr. Powell asked him to reimburse him for fifty dollars he had paid for the dog, but he refused. McCormick testified that the dog in question was in his home at the time of trial.
| BSmith testified on rebuttal that he was positive McCormick had a gun in his hand when McCormick confronted him.
McCormick was charged by bill of information on September 11, 1997 with armed robbery, a violation of La. R.S. 14:64. Following trial by a twelve-person jury, he was found guilty as charged and sentenced to thirty years at hard labor. McCormick pled guilty to a habitual offender bill of information, and waived all legal delays. The trial court set aside the original sentence and re-sentenced him as a second-felony habitual offender to forty-nine and one-half years at hard labor, without benefit of parole, probation or suspension of sentence, to run concurrently with any other sentence. It is from the judgment that McCormick appeals.
ERRORS PATENT
A review of the record reveals no errors patent.
INSUFFICIENT EVIDENCE
In this assignment of error, McCormick argues that the evidence was insufficient to support his conviction.
This court set out the standard for reviewing convictions for sufficiency of the evidence in State v. Egana, 97-0318, pp. 5-6 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 227-28:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is | fiwhat a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green; supra. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a ra *930 tional juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
La. R.S. 14:64 provides:
A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon, (emphasis added).
La. R.S. 14:2 states that the term “Another” refers to any other person or legal entity.”
McCormick argues that he cannot be convicted of the armed robbery where the thing taken was his own dog. In State v. Sanford, 446 So.2d 1381(La.App. 1 Cir. 1984), the court reviewed the defendant’s conviction for armed robbery, stating in part:
It is not essential to the crime of armed robbery that the [things of value] were owned by the victim; it is only 17essential that [the defendant] was not the owner and that the companion [of the victim] had a greater right to possession of the [things of value] at the time of the taking than did [the defendant]. State v. McClanahan, 262 La. 138, 262 So.2d 499 (1972); State v. Morales, 256 La. 940, 240 So.2d 714 (1970); State v. McGuire, 173 La. 871, 138 So. 867 (1931); State v. Babineaux, 146 La. 290, 83 So. 558 (1919).
446 So.2d at 1384.
The cases cited by the court in Sanford were all theft cases, except for Babineaux, which was a burglary case. However, in all of the cases the issue was the ownership of the property that had been the object of the taking, the same issue presented by the armed robbery case before the court in Sanford. Prior to the amendment by Acts 1983, No. 70, § 1, La. R.S. 14:64 defined armed robbery as “the theft of anything of value ....” (emphasis added). “Theft” is, and was at that time, defined by La. R.S. 14:67 as “the misappropriation or taking of anything of value which belongs to another, ....” (emphasis added). Thus, by reference to theft, the pre-1984 definition of armed robbery incorporated the requirement that the thing of value, which was the object of the taking element of the offense, had to belong to another.
In State v. Banks, 96-652 (La.App. 5 Cir. 1/15/97), 694 So.2d 401, the court, as in Sanford, stated:
[I]n the prosecution of an armed robbery, the state need not prove that the property taken was owned by the victim; it is only essential that the accused was not the owner, and that the victim had a greater right to the item than did the accused.
96-652 at p. 13, 694 So.2d at 410-411. Accord State v. Cutwright, 626 So.2d 780, 784 (La.App. 2 Cir.1993), writ denied, 93-2931 (La.2/25/94), 632 So.2d 761; State v. Laird, 548 So.2d 373, 376 (La.App. 3 Cir. 1989), writ denied, 556 So.2d 54 (La. 1990), writ denied, State ex rel. Laird v. State, 95-0916 (La.1/26/96), 666 So.2d 668.
Thus, the above jurisprudence establishes that, to convict a defendant for armed robbery, the thing of value cannot have been owned by the accused at the time of the offense. In addition, where neither the accused nor the victim own the thing, there must be proof that the victim had greater rights in relation to the thing than the accused.
In Sanford, the defendant took a checkbook and check-cashing card at gunpoint from the victim; however, the checkbook and the check-cashing card did not belong to the victim but to his female companion, who was with him. However, the male victim was holding the things for the owner of the property. Thus, the defendant did not own the things, and, clearly, the male victim had a greater right to the things than the defendant.
*931 However, in a ease cited by the State, State v. Doan, 519 So.2d 174 (La.App. 4 Cir.1987), writ denied, State ex rel. Doan v. Fourth Circuit Court of Appeal, Criminal Dist. Court, Section C, 532 So.2d 145 (La.1988), this Court stated: “The felonious taking, more than the perfect title of the alleged owner, is the essence of the jury question in robbery cases.” 519 So.2d at 176, citing State v. Refuge, 300 So.2d 489 (La.1974), as well as previously cited cases, State v. McClanahan and State v. Sanford. Again, in Doan, as in Sanford, and the more recent cases cited, there was no question that the thing taken was not owned by the accused.
In State v. Perry, 612 So.2d 986 (La. App. 2 Cir.1993), the court cited this same “felonious taking” language, but seemed to base its decision on the rule that it is the victim’s greater possessory interest in the property stolen, vis-a-vis the l9accused, that is essential in proving the crime of armed robbery. 612 So.2d at 988. The court held that a gas station cashier clearly had “a far greater right, than did the robber, to possess or control the cash register contents.” Id. Again, no question but that the property was not owned by the accused.
A dog is a corporeal movable. La. C.C. art. 471. In the civil law, the possessor of a corporeal movable is presumed to be the owner. La. C.C. art. 530. However, that presumption does not apply against a previous possessor who was dispossessed as a result of loss or theft. Id. “The ownership and possession of a thing are distinct.” La. C.C. art. 481. One who has possession of a lost thing may not transfer ownership to another. La. C.C. art. 521. (The owner of a thing is entitled to recover it from anyone who possesses or detains it without right. La. C.C. art. 526.) A purchaser of a corporeal movable is in good faith unless he knows, or should have known, that the transferor was not the owner. La. C.C. art. 523. However, the owner of a lost thing may recover it from such good faith purchaser, unless it was sold by authority of law. La. C.C. art. 524.
Thus, under civilian concepts of ownership, one who owns a thing does not lose ownership merely because he loses the thing and it comes into possession of another. La. R.S. 14:64 implicitly requires possession in that, under the statute, the thing must be taken “from the person of another or ... the immediate control of another.” If the law contemplated that possession or control of the thing taken was sufficient to constitute an armed robbery, the statute would not require that, in addition, the thing taken must also belong to another. The term “belong” is commonly defined as: “To be owned;...” The American Heritage College Dictionary, 3d Ed. (1993). However, the term “possess” is also commonly defined as “own.” Id. Nevertheless, in Louisiana civil law, ownership and possession are |inseparate and distinct. La. C.C. art. 481. For purposes of La. R.S. 14:64, ownership and possession must also be considered separate and distinct.
This Court concludes that a thing of value owned by a person cannot belong to another simply by virtue of possession, or even by good faith purchase. To convict a defendant of armed robbery, the thing of value taken must have belonged to another. An accused" has not committed an armed robbery if the thing of value taken is owned by the accused, that is, if it belongs to the accused.
The question in the instant case then is whether a rational trier of fact could have found beyond a reasonable doubt that the dog which was taken from Roy Smith belonged to someone other than McCormick, i.e., was not owned by McCormick.
Mr. Powell testified that he purchased the pit bull for twenty dollars from a stranger standing on a street corner, whom he assumed was the owner. However, he admittedly could not state as a fact that the individual had owned the dog. McCormick testified that he owned the dog, and that he raised dogs. His grand *932 mother testified that he owned the dog, and that he had a number of dogs. His cousin also testified that the dog was owned by him. Det. Powell testified that he photographed three dogs in a cage in his room. One of those dogs was identified as the dog in question.
Though McCormick was arrested for armed robbery, the police left the very dog he was charged with taking at his home. The application for the search warrant and the actual search warrant for McCormick’s residence list a handgun, spent or live cartridges, and any physical evidence associated with a firearm as the items to be recovered from the search. Neither document listed the dog in question.
This Court is not called upon to weigh the credibility of witnesses. _[ilHowever, the evidence that the dog belonged to McCormick is undisputed. While Mr. Powell purchased the dog from a stranger in possession of the dog at the time of the sale, the stranger did not, and could not, transfer ownership to Mr. Powell because it was a lost dog owned by McCormick. None of the evidence shows that ownership of the dog was ever vested in anyone besides McCormick.
Considering these facts and all of the other record evidence, no rational trier of fact could have found beyond a reasonable doubt that the dog belonged to someone other than McCormick. Accordingly, the evidence is insufficient to support his conviction.
Having found the evidence insufficient to support a conviction of armed robbery, we pretermit discussion of the remaining assignments of error and vacate McCormick’s conviction and sentence.

REVERSED.