# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## KA 04-1531

**STATE OF LOUISIANA**

**VERSUS**

**JORDIE KENRY RUBIN**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 03-K1682D
HONORABLE DONALD WAYNE HEBERT, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**JOHN D. SAUNDERS**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, John D. Saunders, and Glenn B. Gremillion, Judges.

**SRC, dissents.**

**AFFIRMED.**

**Earl B. Taylor**
**District Attorney**
**27th Judicial District Court**
**P. O. Drawer 1968**
**Opelousas, LA 70571-1968**
**(337) 948-3041**
**Counsel for Plaintiff/Appellee:**
**State of Louisiana**

**Donald James Richard**
**Assistant District Attorney**
**27th Judicial District Court**
**231 South Union-3rd Floor**
**Opelousas, LA 70570**
**Counsel for Plaintiff/Appellee:**
**State of Louisiana**

**Peggy J. Sullivan**
**Louisiana Appellate Project**
**P. O. Box 2775**
**Monroe, LA 71207-2775**
**(318) 387-6124**
**Counsel for Defendant/Appellant:**
**Jordie Kenry Rubin**

**Alisa Ardoin Gothreaux**
**Assistant District Attorney**
**27th Judicial District Court**
**P. O. Drawer 1968**
**Opelousas, LA 70571-1968**
**(337) 948-3041**
**Counsel for Plaintiff/Appellee:**
**State of Louisiana**

**Jordie Kenry Rubin**
**P. O. Box 650**
**Pine Prairie, LA 70576**
**Counsel for Defendant/Appellant:**
**Jordie Kenry Rubin**

**SAUNDERS, J.**

**MEMORANDUM:**

On June 17, 2003, the State filed a bill of information charging Defendant, Jordie K. Rubin, with three counts of armed robbery in violation of La.R.S. 14:64. On April 21, 2004, a jury found Defendant guilty on all counts. On August 30, 2004, the court sentenced Defendant to concurrently serve fifteen years on each count. Defendant now appeals his conviction and sentence, assigning two errors.

**FACTS:**

On April 13, 2003, Marcus and Kayla Daugherty were at their residence with a friend, Lee Roy Sam. At about 8:00 p.m., someone knocked on the door. The Daughertys and Sam all asked who it was and there was no answer. There was another knock, and they again asked who it was. Once again, there was no answer, so Sam opened the door. A man with tattooed forearms then entered the house wearing a sheer black mask and carrying a gun.

The intruder demanded money, a chain and a bracelet Mr. Daugherty was wearing, and a watch. He also took a cell and house phone, herded the three occupants of the house to a bedroom, and pistol-whipped Mr. Daugherty. He made the trio lie on the bedroom floor then walked them back to the front of the house. The intruder then left through the front door. Subsequently, the victims heard a gunshot outside, near the back of the house. They alerted police, and the ensuing investigation led to Defendant's arrest.

**ERRORS PATENT:**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find no errors patent.

## ASSIGNMENT OF ERROR NO. 1:

In his first assignment, Defendant argues the evidence adduced against him at trial was insufficient to support his conviction.

The general test for such a claim is well-settled, as this court has explained:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

The elements of armed robbery are contained in La.R.S. 14:64, which states in pertinent part that "[a]rmed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon."

On appeal, Defendant focuses upon the victims' identification of him as the

2

robber, arguing that these identifications were faulty. "When identity is disputed, the state must negate any reasonable probability of misidentification in order to satisfy its burden to establish every element of the crime charged beyond a reasonable doubt." *State v. Edwards*, 97-1797, p. 12 (La. 7/2/99), 750 So.2d 893, 902, *cert. denied*, 528 U.S. 1026, 120 S.Ct. 542 (1999).

As Defendant points out, the victims all testified the robber was masked. Mrs. Daugherty testified she could not make out the robber's facial features, but that she saw a tattoo on the robber's right forearm. During the robbery, she did not see a tattoo on his left forearm. She testified she noticed the right arm particularly, because the robber had the weapon in his right hand with his arm extended. At trial, Defendant exposed his right forearm, which is tattooed with the letter "J" in quotation marks, and Mrs. Daugherty identified it as the same tattoo she had seen on the robber. Defendant also exposed his left forearm, which bears the legend "Big 'J.'" On cross-examination, Mrs. Daugherty acknowledged a prior statement to police, in which she stated the robber had "HR" tattooed on his right forearm. She explained the discrepancy by stating the quotation marks on Defendant's right forearm looked like an "H." On redirect, Mrs. Daugherty noted that in her written statement to police, she acknowledged some uncertainty about the tattoo, writing it as "HR ? "

Sam testified he saw "[a] 'J' and something else," on the robber's arm. However, on cross-examination, he acknowledged that, in a prior written statement to police, he stated that the robber had an "R" on his arm. He testified that, in the statement, he was referring to the robber's left arm. Like Mrs. Daugherty, Sam testified the robber was wearing a knit-type mask, but he also stated he was able to

3

identify the robber as Defendant, whom he had been acquainted with "from on the street" for "[a] long time." He further testified that he had no doubt regarding the robber's identity. He acknowledged that, after the crime, he discussed the robber's identity with Mr. Daugherty, but reiterated his confidence in the identification.

Mr. Daugherty testified to the same general scenario as the other two, but did not remember seeing any tattoos on the robber. He also testified that, during the offense, he noticed the offender "kind of looked like Jordie" despite his knit-type mask. Mr. Daugherty explained that he had known Defendant since the latter was a boy, and the robber's gold teeth and "the texture of his face" looked like Defendant's. On both direct and cross-examination, he acknowledged he was not "a hundred percent sure" of the identification, "but it looked like him." He also testified the robber sounded like Defendant. Further, on redirect, he stated he was convinced Defendant and the masked robber were the same person. Mr. Daugherty testified Defendant took a gold chain, a watch, a gold and diamond bracelet, cash, a cell phone, and a cordless house phone.

On appeal, Defendant's main point of contention is that his tattoos are not of either the letter "R" or "H." The court allowed Defendant to enter two photographs into the record for the benefit of review. The two pictures show that Defendant's right arm bears the letter "J" and his left forearm has "Big 'J'" tattooed on it. We note that Mrs. Daugherty explained that the quotation marks around the "J" on Defendant's right arm looked much like "H's" to her. Having viewed the photographs, we find that this explanation is not unreasonable. Further, we find that, given the obviously stressful situation the victims were in, it is not unreasonable to

believe that Mrs. Daugherty and Sam mistakenly viewed the stylized "J's" on Defendant's forearms as "R's." As the discussion in *Kennerson* demonstrates, credibility and other issues related to the weight of trial evidence are squarely within the province of the fact-finder, in this case the jury. A fact-finder's credibility assessment will not be overturned in the absence of manifest error. *State v. James*, 99-1858 (La.App. 3 Cir. 5/3/00), 761 So.2d 125, *writ denied*, 00-1595 (La. 3/23/01), 787 So.2d 1010. Further, as the State observes, the jury was free to "accept or reject, in whole or in part," any witness's testimony. *State v. Silman*, 95-0154, p. 12 (La. 11/27/95), 663 So.2d 27, 35. Our review of the jurisprudence suggests a court will only revisit a credibility determination when a trial witness' own testimony reveals an impairment in that witness' ability to objectively perceive events. *See*, e.g., *State v. Bourque*, 94-291 (La.App. 3 Cir. 11/2/94), 649 So.2d 670. We find that the eyewitness testimony in the present case did not reveal that the witnesses ability to perceive events was impaired.

Also, Defendant told police he was not in town at the time of the robbery, although he was vague about the exact date, because his cousin, Desiree Richard, had given him a ride to Lafayette. However, his cousin was a State witness. She said she did not remember ever giving Defendant a ride to Lafayette, that her brother had her car in April, and that she was in Texas on April 13.

For the reasons discussed, we conclude that the jury was reasonable in crediting the testimony of the State's eyewitnesses, or in finding the State negated any reasonable probability of misidentification. Thus, Defendant's credibility-related arguments lack merit.

5

Defendant argues there is another potential problem with the State's case regarding the charges that Defendant committed the armed robbery against Mrs. Daugherty and Sam. Defendant observes there was no testimony that he took anything from either Mrs. Daugherty or from Sam. We find no merit in the agrument regarding Mrs. Daugherty because, as the testimony demonstrated, she was Mr. Daugherty's wife and shared the residence. Although the record is not clear as to exactly which items were on Mr. Daugherty's person and which were not, Mrs. Daugherty undoubtedly had an ownership interest in, or constructive control of, at least some of the items taken. At the very least, the cordless telephone taken from the living room would be considered an item under her control for purposes of La.R.S. 14:64. *See*, e.g., *State v. Long,* 36,167 (La.App. 2 Cir. 10/30/02), 830 So.2d 552. (Money stolen from bar was in the immediate control of the victim, a bar employee, for purposes of robbery statute. Although she was not in room at time of robbery, she was responsible for the money that was taken.) Thus, in regard to the armed robbery of Mrs. Daugherty, we find that this assignment lacks merit.

Defendant's argument regarding Sam is somewhat stronger, as Sam testified nothing was taken from him. Also, he was a visitor and the record does not indicate he had any ownership interest in the house or anything in it. As Sam himself put it, during cross-examination: "He didn't take anything from me. He took something from the people that I was at. I just happened to be at the house." The State did not conduct any redirect examination of Sam. However, during its close, the State argued that Sam was a victim of armed robbery because items in the house were within his "immediate control." We agree. Our review of the jurisprudence suggests

6

the State's position is correct. "The property taken in a robbery must be sufficiently under the victim's control that, absent violence or intimidation, the victim could have prevented the taking." *State v. Thomas*, 447 So.2d 1053, 1055 (La.1984).

We note the rationale behind the definition, as explained by the supreme court:

> By providing a more severe grade of theft for those instances in which a thief uses force or intimidation to accomplish his goals, the legislature apparently sought to emphasize the increased risk of danger to human life posed when a theft is carried out in face of the victim's opposition. Because the possibility of such a violent confrontation may exist in situations other than those where property is taken *directly* from the person of another, it has been recognized that it is sufficient for robbery that the property taken be sufficiently under the victim's control, such that, had the victim not been subjected to violence or intimidation by the robber, he could have prevented the taking. *State v. Refuge*, 300 So.2d 489 (La.1974); *State v. Verret*, 174 La. 1059, 142 So. 688 (1932); LaFave & Scott, Criminal law (Hornbook ed. 1972), § 94, p. 696.

*State v. Mason*, 403 So.2d 701, 704 (La.1981).

Thus, we find that the legal identification of robbery victims is based less upon the possessory interest of such victims, and more upon the physical danger or threat such individuals face due to the robbery. As the State pointed out, Sam opened the Daugherty's door and Defendant pointed a gun at him. Therefore, Sam was clearly menaced, even though he testified the robber did not take anything from him. This legal identification of robbery victims is supported by jurisprudence. In *State v. Sanford*, 446 So.2d 1381, 1384 (La.App. 1 Cir.1984), the court, citing a line of supreme court cases, stated that:

> It is not essential to the crime of armed robbery that the [things of value] were owned by the victim; it is only essential that [the defendant] was not the owner and that the companion [of the victim] had a greater right to possession of the [things of value] at the time of the taking than did [the defendant]. *State v. McClanahan*, 262 La. 138, 262 So.2d 499 (1972); *State v. Morales*, 256 La. 940,

7

240 So.2d 714 (1970); *State v. McGuire*, 173 La. 871, 138 So. 867 (1931); *State v. Babineaux*, 146 La. 290, 83 So. 558 (1919).

Likewise, in *State v. Banks*, 96-652 (La.App. 5 Cir. 1/15/97), 694 So.2d 401, 410-11, the court stated that:

> [I]n the prosecution of an armed robbery, the state need not prove that the property taken was owned by the victim; it is only essential that the accused was not the owner, and that the victim had a greater right to the item than did the accused. *State v. Laird*, 548 So.2d 373, 376 (La.App. 3 Cir.1989), *writs denied*, 556 So.2d 54 (La.1990), 95-0916 (La.1/26/96), 666 So.2d 668.

This jurisprudence establishes that, when a victim has greater rights than the Defendant in the thing stolen, a defendant can be convicted for armed robbery. *State v. McCormick*, 98-0718 (La.App. 4 Cir. 6/9/99), 737 So.2d 926, *writ denied*, 99-2009 (La. 1/14/00), 753 So.2d 207.

While Sam did not have an ownership interest in the stolen property, he was a guest in the Daugherty's home. Due to his status as guest, we find that he had greater rights in the property than Defendant, who was an uninvited intruder. Sam did have a measure of control over some of the property stolen because, as an invitee, he would have been able to use the telephones and would have been expected to guard them against destruction or misappropriation. For example, according to the above quoted jurisprudence, if Sam had been present in the Daugherty's home while they were momentarily away and Defendant entered the home and stole the same items, an armed robbery conviction would be proper based upon Sam's greater rights to the property. Between Sam and Defendant, Sam would have had greater rights to the property in the home as he is a friend of the residents. We do not feel that the

Daugherty's presence in the home destroys the identification of robbery victims, who do not have an ownership interest, based upon their greater rights to stolen property. Rather, the Daugherty's presence means that there were three victims of the armed robbery; therefore, conviction on three counts of armed robbery are appropriate.

**ASSIGNMENT OF ERROR NO. 2:**

In his second assignment of error, Defendant argues his three concurrent fifteen-year sentences are excessive. He acknowledges he did not file a motion to reconsider sentence below, as required by La.Code Crim.P. art. 881.1. However, pursuant to a policy adopted at Conference in October 2001, we review the sentence for excessiveness.

This court has explained the appropriate analysis for excessive-sentence claims:

> La. Const. art. 1, § 20 ensures that "[n]o law shall subject any person to . . . cruel, excessive, or unusual punishment." A punishment is considered constitutionally excessive if it "(1) makes no measurable contribution to acceptable penal goals of punishment and hence is nothing more tha[n] the purposeful and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime." *State v. Wilson*, 96-1392, p. 3 (La.12/13/96); 685 So.2d 1063, 1065(citing *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). When reviewing a sentence, the appellate court must be mindful that the trial court is in the best position to consider the aggravating and mitigating circumstances of each case and that the trial court is given broad discretion in sentencing. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957. As such, the reviewing court will determine whether the trial court abused its broad discretion, not whether another sentence may have been more appropriate. *Id.*
>
> The trial court must state for the record the considerations taken into account and the factual basis for the sentence. La.Code Crim.P. art. 894.1(C). Although the trial court need not refer to every factor listed in Article 894.1(A), the record should affirmatively reflect that adequate consideration was given to codal guidelines in particularizing the defendant's sentence. *State v. Iron*, 00-1238 (La.App. 3 Cir. 2/15/01);

9

780 So.2d 1123, *writ denied*, 01-1232 (La.3/15/02); 811 So.2d 898. Yet, when the trial court fails to adequately address the factors of La.Code Crim.P. art. 894.1, "the trial court's reasoning alone will not necessitate the need for re-sentencing as long as an adequate factual basis is found within the record." *State v. Butler*, 98-1258, p. 7 (La.App. 3 Cir. 2/3/99); 734 So.2d 680, 684.

*State v. Collins*, 03-388, p. 4 (La.App. 3 Cir. 10/8/03), 865 So.2d 117, 120.

The requirements of La.Code Crim.P. art. 894.1 have been subsumed into courts' analyses for excessiveness in *State v. Telsee*, 425 So.2d 1251 (La.1983), which observed that the article's criteria help advance the constitutional analysis.

In the present case, the sentencing court commented on the factors that contributed to the formulation of Defendant's sentence:

> THE COURT: Okay, let the record reflect that the Court notes on April 21, 2004, as a result of a jury verdict, this gentleman was found guilty of three counts of armed robbery in Docket Number 03-1682. The Court ordered a pre-sentence investigation and received the same and had the opportunity to review, and as a result, notes that this gentleman is a first time felony offender. He did have a juvenile record; no other adult offenses other than the instant offense. The Court further notes that pursuant to Article 894.1 of the Code of Criminal Procedure, and in particular the public policy goals of deterrence, protection and rehabilitation, and Article 894.1(A)(1)(2) and (3), the Court recalls the details of this particular event where I agree with Mr. Olivier that no handgun was ever recovered. All three witnesses testified there was a handgun involved. There was danger presented to the parties in question and someone could have easily gotten killed as a result of the activities involved here. It was just a flat old robbery. All I can say is considering Article 894.1(A)(1)(2) and (3), and given the nature of the offense involved herein, I'm going to sentence this gentleman to fifteen years at hard labor. The Court notes that this is in fact a crime of violence. The sentence has not been enhanced and I inform the defendant that you have two years in which to seek post conviction relief. The Court notes that he has executed a post-conviction relief form which further details his rights as to post-conviction relief. I'm going to label the PSI as Court Exhibit #1 and the post-conviction form as Court #2.

> MR. OLIVIER: Your Honor, that's fifteen years on each count, concurrent?

THE COURT: Oh, I'm sorry, fifteen years on each count, to run concurrent with one another.

Given the ten to ninety-nine-year sentencing range on each count, Defendant's sentences are near the lower end of the scale. Also, the lower court acknowledged a major mitigating factor, namely the fact that Defendant is a first-time felony offender. However, the court also noted the obvious danger inherent in the offense, in which Defendant menaced three people at gunpoint. Louisiana courts have found longer sentences, between thirty-five and fifty years, acceptable for first-offenders. *State v. Smith*, 01-2574 (La. 1/14/03), 839 So.2d 1. Thus, we are unable to say the sentencing court abused its broad discretion in rendering the sentences at issue. For the reasons discussed, this assignment lacks merit.

## CONCLUSION:

The convictions and sentences are affirmed.

**AFFIRMED.**